# Exhibit 3

IN THE CRIMINAL COURT FOR DAVIDSON COUNTY, TENNESSEE
DIVISION II

OSCAR SMITH )
    Petitioner )
)
vs. ) Case No.: 89-F-1773
) Death Penalty Post-Conviction
)
STATE OF TENNESSEE )
    Respondent )

*Filed APR 11 2022 By: BW*

## ORDER DENYING "MOTION TO REOPEN POST-CONVICTION PROCEEDINGS AND/OR FOR REVIEW UNDER POST-CONVICTION DNA ANALYSIS ACT OF 2001"

### I. Introduction

This matter came before the Court upon the above-referenced motion, filed with the Court April 4, 2022. The Petitioner, Oscar Smith, asserts he is entitled to relief both under the statutory provision for reopening post-conviction proceedings, Tennessee Code Annotated section 40-30-117, and under the Post-Conviction DNA Analysis Act of 2001, Tennessee Code Annotated sections 40-30-301 through -313, based on what he claims is evidence of an unknown person's DNA found on a suspected murder weapon. After reviewing the parties' filings, the relevant authorities, and the record as a whole, the Court concludes the Petitioner is not entitled to have his post-conviction proceedings reopened, and he is not entitled to relief under the post-conviction DNA act. Accordingly, the motion is DENIED.

### II. Procedural History[1]

---

[1] The Hon. J. Randall Wyatt, Jr., retired Judge of Criminal Court, Division II, presided over the Petitioner's trial and original post-conviction proceedings. The undersigned Judge has presided over all proceedings in this Court involving Mr. Smith since Judge Wyatt retired in 2017.

### A. Trial and Direct Appeal

A Davidson County jury convicted the Petitioner of three counts of first degree murder for the October 1989 killings of his estranged wife, Judy Smith, and Ms. Smith's teenaged sons, Chad and Jason Burnett. The jury sentenced Mr. Smith to death on all three counts. On appeal, the Tennessee Supreme Court affirmed the Petitioner's convictions and sentences. *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993).

### B. Post-Conviction

The Petitioner filed a timely petition for post-conviction relief. After the appointment of counsel, the post-conviction court denied Mr. Smith's petition. The Court of Criminal Appeals affirmed the post-conviction court's decision on direct appeal. *Oscar Franklin Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353 (Tenn. Crim. App. June 30, 1998). The Tennessee Supreme Court denied Petitioner's application for permission to appeal on January 25, 1999.

### C. Federal Habeas Corpus

After the 1999 conclusion of his post-conviction proceedings, Mr. Smith filed a timely petition for writ of habeas corpus in the United States District Court for the Middle District of Tennessee. The habeas case made its way through the federal courts over the next two decades. The most recent federal proceedings occurred in 2018-19. The District Court denied relief in January 2018, and in August 2018 the Sixth Circuit denied a certificate of appealability. *See Oscar Smith v. Tony Mays, Warden*, No. 18-5133 (6th Cir. Aug. 22, 2018) (order denying certificate of appealability). The United States Supreme

Court denied Mr. Smith's petition for certiorari on June 10, 2019.

**D. Additional State Court Proceedings**

Petitioner has filed two previous motions to reopen his post-conviction proceedings. These petitions were dismissed without a hearing, and the Court of Criminal Appeals denied permission to appeal. *See, e.g., Oscar Smith v. State*, No. M2016-01869-CCA-R28-PD (Tenn. Crim. App. Oct. 19, 2016) (denying permission to appeal after the trial court denied motion to reopen based on U.S. Supreme Court opinions in *Obergefell v. Hodges* and *Glossip v. Gross*); *Oscar Smith v. State*, No. M2019-01662-CCA-R28-PD (Tenn. Crim. App. Oct. 28, 2019) (denying permission to appeal after this Court denied motion to reopen based on Supreme Court opinion in *McCoy v. Louisiana*).

In advance of a May 2020 execution date—which was ultimately stayed due to COVID-19 concerns—the Petitioner filed with this Court a separate "omnibus motion" seeking relief through a motion to reopen his post-conviction petition, a petition for writ of error coram nobis, and several other procedures. This Court denied the omnibus petition, and the Court of Criminal Appeals affirmed this Court on direct appeal. *See Oscar Smith v. State*, No. M2020-00485-CCA-R3-ECN, 2020 WL 5870566 (Tenn. Crim. App. Oct. 2, 2020) (not for citation), *perm. app. denied*, (Tenn. Dec. 3, 2020); *see also Oscar Smith v. State*, No. M2020-00493-CCA-R28-PD (Tenn. Crim. App. May 1, 2020) (denying permission to appeal as to the motion to reopen).

**E. Post-Conviction Fingerprint Action**

On July 1, 2021, the Petitioner filed a petition for relief pursuant to the Post-

Conviction Fingerprint Analysis Act of 2021, T.C.A. §§ 40-30-401 through -413, which became law the same day Mr. Smith filed his petition. The post-conviction fingerprint petition focused not on the awl (the evidence at issue in the current petition), but on a bloody palm print left at the crime scene. This Court concluded Petitioner was not entitled to relief, and on November 9, 2021, this Court dismissed the fingerprint petition without a hearing. The Court of Criminal Appeals affirmed this Court's decision on direct appeal. *Oscar Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022) ("Smith fingerprint opinion"). The Tennessee Supreme Court denied permission to appeal on April 6, 2022.

### III. Summary of Petitioner's Factual Claims

On December 7, 2016, during the pendency of Mr. Smith's federal habeas corpus litigation, forensic fingerprint examiner Kathleen Bright-Birnbaum filed a report detailing her analysis of several fingerprints left at the crime scene. Among the prints detailed in Ms. Bright-Birnbaum's report, included as Exhibit 1 to Mr. Smith's present motion, were two fingerprints lifted from an awl (misidentified as a "leather *awe*" in the report) believed to be used during the offenses. Ms. Bright-Birnbaum identified one of the prints as belonging to Johnny Hunter, the Metropolitan Nashville Police Department fingerprint examiner who testified at Petitioner's trial. *See* Bright-Birnbaum report at 2. Regarding the second print, Ms. Bright-Birnbaum explained the print was "identifiable," but she was unable to identify who left the print. *Id.*[2]

---

[2] The known comparison prints referenced in Ms. Bright-Birnbaum's report—presumably, those against which the unknown print was compared—were those of Mr. Smith, the three victims, three members of the Metropolitan Nashville Police Department (including Hunter), and three persons specifically identified in Ms. Bright-Birnbaum's report but whose potential connection to this case is not apparent from the current pleadings. *See id.* at 1-2

4

316

According to the Petitioner, the presence of the unknown fingerprint on the awl prompted Petitioner's attorneys to seek DNA testing of the awl. Based upon the agreement of the parties, this Court entered an agreed order on January 19, 2022, transferring the awl to the Petitioner's selected DNA analyst, the Serological Research Institute ("SERI"). On February 28, 2022, the Court entered another agreed order transferring samples of the Petitioner's, Jason Burnett's, and Judith Smith's blood, along with a sample of Chad Burnett's hair, to SERI. Counsel for the Petitioner explains the resubmission of these samples as follows:

> As noted in the SERI report, the technology used here [to conduct the touch DNA anlaysis] is so new that [the examiner] had to re-examine the "known" specimens previously analyzed in 2016 so that a scientifically valid comparison could be achieved. Ex 4, SERI Rep. at 2 (noting resubmission of items); *see also* Second DNA Order, February 28, 2022 (releasing the known samples to SERI pursuant to the parties' agreement).

Smith motion at 6 n.3 (alterations added).

On March 30, 2022, SERI forensic DNA analyst Gary Hamor (and a "technical reviewer" whose electronic signature appears only as the initials "PH") submitted SERI's report on the agency's DNA analysis to the Petitioner's lead attorney, Amy Harwell. Regarding SERI's testing of the awl handle, which consisted of comparing a "touch DNA" sample obtained from the awl handle against known DNA samples from the Petitioner and the three victims, the report stated:

> a. A DNA mixture was obtained.
>
> b. The DNA mixture was interpreted as originating from two contributors with a major male contributor. Chad Burnette *[sic]* could be the major contributor to this mixture. The chance that a randomly selected, unrelated person would have the same profile as the major contributor is approximately 1 in 4 octillion.

5

c. Oscar Smith, Jason Burnette *[sic]*, and Judy Smith are all excluded as contributors to the DNA results obtained from this item.

d. The minor portion of the mixture is suitable for comparison.

SERI Report, at 4 (included as Exhibit 4 to Petitioner's current motion).

As stated above, the DNA profile obtained from the awl handle consists of "touch DNA." In explaining the timing of the Petitioner's current motion, Petitioner's attorneys write,

> Though it has been theoretically possible to develop "touch DNA" for several years, the Applied Biosystems™ GlobalFiler™ PCR Amplification Kit was not developed until 2012 and did not become available in most labs until after 2017. Ex.4 at 8, SERI Rep. The fully continuous probabilistic genotyping software program used for analysis on the awl, Bullet Proof Sentry, was not available until 2022. *Id.* That is, touch DNA was not available until well after Mr. Smith's trial and post-conviction proceedings, and the technology used to perform the touch DNA analysis that supports this Motion was not available until this year. Ex. 4, SERI Report at 8

Petitioner's motion, at 5-6 (footnote omitted).

## IV. Applicable Legal Standards

### A. Motions to Reopen Post-Conviction Proceedings

Tennessee Code Annotated section 40-30-117 states, in relevant part,

> (a) A petitioner may file a motion in the trial court to reopen the first post-conviction petition only if the following applies:
>
> [. . .]
>
> (2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; [and]
>
> [. . .]
>
> (4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

6

(b) The motion must set out the factual basis underlying its claims and must be supported by affidavit. The factual information set out in the affidavit shall be limited to information which, if offered at an evidentiary hearing, would be admissible through the testimony of the affiant under the rules of evidence. The motion shall be denied unless the factual allegations, if true, meet the requirements of subsection (a). If the court grants the motion, the procedure, relief and appellate provisions of this part shall apply.

(c) If the motion is denied, the petitioner shall have thirty (30) days to file an application in the court of criminal appeals seeking permission to appeal. The application shall be accompanied by copies of all the documents filed by both parties in the trial court and the order denying the motion. The state shall have thirty (30) days to respond. The court of criminal appeals shall not grant the application unless it appears that the trial court abused its discretion in denying the motion. If it determines that the trial court did so abuse its discretion, the court of criminal appeals shall remand the matter to the trial court for further proceedings.

Tenn. Code Ann. § 40-30-117(a)(2), (b)-(c).

"In order to satisfy the requirements of § 40-30-[1]17, a petitioner must delineate, in the motion to reopen, the new scientific evidence that has already been secured and which will establish his or her actual innocence." *Ray v. State*, 984 S.W.2d 236, 238 (Tenn. Crim. App. 1997) (alteration added, emphasis deleted).

**B. Post-Conviction DNA Analysis Act**

The Post-Conviction DNA Analysis Act allows, under certain circumstances, individuals convicted of certain crimes, including first degree murder, to obtain DNA testing of certain evidence at any time. *See* Tenn. Code Ann. §§ 40-30-301 through -313. Specifically, the court *shall* order DNA analysis if it finds:

(1) A reasonable probability exists that the petitioner *would not have been prosecuted or convicted* if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304 (emphasis added). The Court *may* order DNA testing if a "reasonable probability exists that analysis of the evidence will produce DNA results that *would have rendered the petitioner's verdict or sentence more favorable* if the results had been available at the proceeding leading to the judgment of conviction" and elements (2) through (4) listed in subsection -304 are met. Tenn. Code Ann. § 40-30-305 (emphasis added).

A "reasonable probability" of a different result exists when potentially favorable DNA testing results "undermine the confidence in the outcome of the prosecution." *Sedley Alley v. State*, No. W2006-01179-CCA-R3-PD, 2006 WL 1703820, at *14 (Tenn. Crim. App. June 22, 2006). "Under section 40-30-304(1), therefore, prior to a mandatory order of testing, a petitioner's argument must merely establish 'a probability sufficient to undermine confidence' in the decision to prosecute or in the conviction had the State or the jury known of exculpatory DNA testing results." *State v. Powers*, 343 S.W.3d 46, 55 (Tenn. 2011). Under section 40-30-305(1), then, the petitioner must establish only "a probability to undermine confidence" in the petitioner's conviction or sentence had the jury known about exculpatory DNA evidence at trial.

"In making its decision [on the DNA petition], the post-conviction court must consider all the available evidence, including the evidence presented at trial and any stipulations of fact made by either party." *Powers*, 343 S.W.3d at 56. When reviewing a DNA petition, the court assumes the DNA testing will reveal exculpatory evidence, and

8

"the evidence must be viewed in light of the effect that exculpatory DNA evidence would have had on the fact-finder or the State." *Id.* at 55. However, "there is no presumption of innocence afforded to a petitioner" who files a DNA post-conviction petition. *Charles Elsea v. State*, No. E2017-01676-CCA-R3-PC, 2018 WL 2363589, at *4 (Tenn. Crim. App. May 24, 2018), *no perm. app. filed*. The petitioner bears the burden of establishing all four criteria under T.C.A. sections 40-30-304 and -305, and "[t]he court must dismiss the petition if the petitioner fails to establish each of the four criteria required" in the statute. *Powers*, 343 S.W.3d at 48.

The Tennessee Supreme Court has concluded DNA testing available to a post-conviction petitioner may include a comparison between the evidence at issue and other profiles contained in a DNA database—in other words, the comparison is not limited merely to the petitioner's DNA profile. *See id.* at 49-50.

**V. Application to Present Case**

The Court first addresses the timing of Petitioner's current motion. The Court observes that the post-conviction DNA analysis act allows a person to file a motion for DNA testing "at any time," Tenn. Code Ann. § 40-30-103, and no limitations period is listed in the statutory provision permitting a post-conviction petitioner to file a motion to reopen based on scientific evidence of actual innocence, *see* Tenn. Code Ann. § 40-30-117(a)(2). Although the current motion was filed seventeen days before Mr. Smith's scheduled execution date, the process which led to the motion began on January 19, 2022, when this Court entered the order transferring the awl to the Petitioner's selected DNA lab for testing. The timing of the motion is far from ideal, but this Court has no reason to

believe the timing results from an attempt to "unreasonably delay the execution of sentence or administration of justice," as contemplated in T.C.A. sections 40-30-404(4) and 40-30-405(4).

However, even in viewing the evidence in the light most favorable to the Petitioner—in this case the Court has no reason to doubt that SERI's testing of the touch DNA obtained from the crime scene awl revealed a profile that was, conclusively, not that of Mr. Smith—the Petitioner is not entitled to relief through a motion to reopen or under the post-conviction DNA act. As this Court set forth in its order dismissing Mr. Smith's post-conviction fingerprint petition, extensive evidence of the Petitioner's guilt was introduced at trial. The Court of Criminal Appeals summarized that evidence in its opinion affirming this Court's dismissal of the fingerprint petition:

> As the trial court observed, "the State possessed extensive circumstantial evidence against Petitioner other than the palm print, including (1) Petitioner's prior threats against and/or prior violence involving the victims; (2) a neighbor seeing Petitioner's car in the victims' driveway the night of the murders; (3) life insurance policies taken out by Petitioner on the lives of the three victims, and (4) one of the child victims yelling out 'Frank, no!' on the 911 recording." Moreover, as the trial court noted, "[t]he evidence introduced at trial suggested Petitioner (and nobody else) had motive to kill the victims." Two of Petitioner's co-workers testified Petitioner solicited them to kill his wife. Likewise, as summarized above, evidence, in addition to the neighbor's testimony, was introduced to contest Petitioner's alibi defense. The jury also learned Petitioner referred to his estranged wife in the past tense during questioning by the police and he did not "ask the officers the logical questions of where, when, how and by whom" when he was informed about the murders. *Oscar Smith*, 2005 WL 2416504, at *4.[3] The post-conviction evidence also revealed Petitioner "was not contesting that the print was his; he was claiming that someone planted the print at the scene." *Oscar Franklin Smith*, 1998 WL 345353, at *15.[4] Even Bright-Birnbaum could not conclusively state Petitioner did not leave the bloody palm print at the crime scene.

---

[3] *Oscar Smith v. Ricky Bell, Warden*, No. 3:99-0731, 2005 WL 2416504 (M.D. Tenn. Sept. 30, 2005) (federal district court order dismissing habeas corpus petition).

[4] *Oscar Franklin Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353 (Tenn. Crim. App. Jun 30, 1998) (affirming denial of post-conviction relief).

Smith fingerprint opinion, 2022 WL 854438, at *16 (footnotes added); *see also id.* at **2-7 (quoting list of facts set forth in federal district court opinion denying habeas corpus petition; this Court's November 2021 order denying fingerprint motion also quoted that list). Additionally, this Court notes that in the DNA testing performed by Petitioner's selected laboratory, Mr. Smith's DNA "could be included as [a] contributor[] to the DNA results obtained" from the left sleeve of an "off-white long sleeve shirt with large red/brown stains."[5] Presumably, this article of clothing was a bloodstained item worn by one of the victims at the time of that person's death.

To quote further from the Court of Criminal Appeals' opinion,

> In the case at hand, if we stacked the assumed most favorable [touch DNA] evidence on one side of a set of scales and the trial evidence on the other, the [touch DNA] evidence would not even begin to affect the scales or tip them in Petitioner's favor, either as to the guilty verdict or the sentences of death.

Smith fingerprint opinion, 2022 WL 854438, at *17 (alterations added).

Thus, the Court concludes there is not a reasonable probability that the recently-discovered DNA evidence would have prevented Mr. Smith's prosecution or conviction. Nor is there a reasonable probability the recently-discovered DNA evidence would have resulted in a more favorable conviction or sentence for Mr. Smith had the DNA evidence been presented at trial. Thus, Mr. Smith is not entitled to relief under either T.C.A. section 40-30-304 or section 40-30-305.[6] Similarly, given the extensive evidence of Mr. Smith's guilt produced at his trial, even when considering the DNA evidence resulting from SERI's

---

[5] *See* SERI testing report at 2-3 (exhibit 4 to present motion).

[6] The Court observes that the touch DNA evidence at issue in this case had not been subjected previously to the type of testing conducted by SERI. While the awl still exists in a condition in which it can be tested, it is unclear whether the awl was preserved in such a manner that would have assured the DNA profiles were left at the crime scene and did not result from contamination. Had the other elements of sections 40-30-304 and -305 been met, however, this Court would have allowed the Petitioner to present evidence concerning this issue at an evidentiary hearing.

11

recent testing in a light most favorable to the Petitioner, the Court concludes Mr. Smith would be unable to prove by clear and convincing evidence that the DNA evidence establishes he is actually innocent of the offenses for which he was convicted. Thus, he is not entitled to reopen his post-conviction proceedings under T.C.A. section 40-30-117(a)(2).[7]

## VI. Conclusion

For the reasons stated above, Mr. Smith's motion to reopen and motion for relief under the post-conviction DNA analysis act is DENIED.

Per T.C.A. section 40-30-309, the Court ORDERS that all DNA evidence which could be subject to future testing shall be preserved to facilitate appellate review and any additional testing which may occur later.

A copy of this Order shall be provided to the Office of the Attorney General and Reporter.

IT IS SO ORDERED this the 11th day of April, 2022.

_____
Angelita Blackshear Dalton
Criminal Court Judge, Division II

---

[7] The Court observes the Petitioner's allegations are not supported by affidavit, as is required by T.C.A. section 40-30-117(b). Had this Court concluded the Petitioner was entitled to have his post-conviction proceedings reopened, the Court would have permitted Petitioner's counsel to correct this oversight.

Case 3:22-cv-00280   Document 1-3   Filed 04/18/22   Page 13 of 14 PageID #: 48

cc:    Ms. Amy Harwell and Ms. Katherine Dix
Office of the Federal Public Defender
by email: Amy_Harwell@fd.org
by email: Katherine_Dix@fd.org

Mr. Glenn Funk
District Attorney General
By email: GlennFunk@jis.nashville.org

Office of the Tennessee Attorney General
By email: tnattygen@ag.tn.gov

Jason Steinle
Capital Case Attorney
Tennessee Court System
By email: jason.steinle@tncourts.gov