# Exhibit 7

Electronically RECEIVED on April 13, 2022
Appellate Court Clerk

Electronically FILED on April 13, 2022
Appellate Court Clerk

M2022-00460-CCA-R28-PD

TENNESSEE COURT OF CRIMINAL APPEALS
AT NASHVILLE

| | | |
|---|---|---|
| OSCAR SMITH | ) | |
| | ) | |
| Petitioner | ) | No. ____________________ |
| | ) | Criminal Court No. 89-F-1773 |
| v. | ) | **Death Penalty Case** |
| | ) | **Execution Date: April 21, 2022** |
| STATE OF TENNESSEE | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |

**APPLICATION FOR PERMISSION TO APPEAL**

AMY D. HARWELL, BPR #18691
Asst. Chief, Capital Habeas Unit

KATHERINE M. DIX, BPR #22778
Asst. Federal Public Defender

FEDERAL PUBLIC DEFENDER
FOR THE MIDDLE DISTRICT OF
TENNESSEE
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047

## APPLICATION FOR PERMISSION TO APPEAL

Pursuant to Tennessee Code Annotated § 40-30-117(c), Oscar Smith respectfully requests that this Honorable Court grant him permission to appeal the dismissal of his motion to reopen post-conviction proceedings by the Criminal Court of Davidson County, Tennessee. App. 1, Mot.; App. 2, Order; App. 3 Mot. To Recons.; App. 3 Order on Recons. In that motion, Mr. Smith raised claims that new, previously unavailable DNA technology has revealed proof of his actual innocence of the crime for which he stands condemned—and for which he will be executed in less than a week.

This Court should now grant Mr. Smith permission to appeal his entitlement to review and relief due to his actual innocence. This Court should conclude that the trial court abused its discretion by failing to apply binding Tennessee Supreme Court precedent regarding the standard of proof necessary to merit a hearing under these circumstances, reverse the judgment below, and remand for further proceedings, including an evidentiary hearing on Mr. Smith's actual innocence.

## TABLE OF CONTENTS

DATE OF JUDGMENT .......... 6

QUESTION PRESENTED .......... 6

STATEMENT OF FACTS .......... 6

REASONS FOR GRANTING THE APPLICATION .......... 9

CONCLUSION .......... 14

CERTIFICATE OF SERVICE .......... 15

## TABLE OF AUTHORITIES

Cases:

*Eddings v. Oklahoma*,
455 U.S. 104 (1982) .......... 12

*Howell v. State*,
151 S.W.3d 450 (Tenn. 2004) .......... 6, 10, 13

*Lockett v. Ohio*,
438 U.S. 586 (1978) .......... 12

*Martinez v. Ryan*,
556 U.S. 1 (2012) .......... 7

*Penry v. Johnson*,
532 U.S. 782 (2001) .......... 12

*Skipper v. South Carolina*,
476 U.S. 1 (1986) .......... 12

*Smith v. State*,
No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022) .......... 6

*State v. Bane*,
57 S.W.3d 411 (Tenn. 2001) .......... 12

*State v. Hartman*,
42 S.W.3d 44 (Tenn. 2001) .......... 12, 13

*State v. Jones*,
568 S.W.3d 101 (Tenn. 2019) .......... 12

*State v. Kiser*,
284 S.W.3d 227 (Tenn. 2009) .......... 12

*State v. McKinney,*
74 S.W.3d 291 (Tenn. 2002) .................................................................. 12

*Van* Tran v. State,
66 S.W.3d 790 (Tenn. 2001) ........................................................... 6, 11,13

Other Authorities:

Tennessee Code Annotated § 39–13–204(c) ........................................... 12

Tennessee Code Annotated § 40-30-117 ......................................... 6, 9, 13

Tennessee Code Annotated §§ 40-30-404 *et seq*. ......................................... 6

Tennessee Supreme Court Rule 28 § 6(B) ............................. 9, 10, 11, 13

Tennessee Supreme Court Rule 28 § 10(B) ........................................... 14



Case 3:22-cv-00280 Document 1-7 Filed 04/18/22 Page 6 of 16 PageID #: 81

## DATE OF JUDGMENT

The trial court denied Mr. Smith's motion to reopen his post-conviction petition on April 11, 2022. App. 1, Mot.; App. 2, Order. The trial court denied his motion to reconsider on April 12, 2022. App. 3, Mot. to Recons.; App. 4, Order.

## QUESTION PRESENTED

In *Howell v. State*, 151 S.W.3d 450 (Tenn. 2004), and *Van Tran v. State*, 66 S.W.3d 790 (Tenn. 2001), the Tennessee Supreme Court held that in cases where a petitioner has had no prior opportunity to present a claim involving a fundamental right, due process requires that motions to reopen under Tennessee Code Annotated § 40-30-117 be evaluated under the "colorable claim" standard.

According, the question presented is:

Whether, in a capital case where the DNA evidence of actual innocence could not have been established prior to this year, the trial court abused its discretion by denying Mr. Smith's motion to reopen under the "clear and convincing evidence" standard.

## STATEMENT OF FACTS

As this Court is aware, Mr. Smith has been attempting to present new proof of his innocence since July 2021. On July 1, 2021, Mr. Smith filed a petition under the Post-Conviction Fingerprint Analysis Act, Tennessee Code Annotated §§ 40-30-404 *et seq.*—the very day it became effective. *See, Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022). In support of his petition, he

presented a report from Kathleen Bright-Birnbaum—a pre-eminent fingerprint examiner who primarily testifies on behalf of law enforcement—regarding multiple errors made by the State's fingerprint analyst, Sergeant Johnny Hunter. Critically, among those errors, Hunter failed to realize that he had obtained from the murder weapon an identifiable fingerprint from the perpetrator. *See* App. 1, Ex. 1, Bright-Birnbaum Report; *id.*, Ex. 2, Medical Examiner Testimony at 65, 120 (describing wounds inflicted by awl); *id.,* Ex. 6, Opening & Closing Statements at 6 (arguing "[a]nd he had taken three weapons with him, a .22 pistol, a buck knife, which he carried frequently, and what's called an awl, which is like an ice pick, which is a leatherworking tool"). Although Hunter collected the perpetrator's print from the awl, he marked it as "N/V,"—or, "no value"— indicating that it could not be used for identification. *Id.*, Ex. 7, Hunter Report (dismissing 30 prints, including that on the awl, as having "no identifiable value").

As part of federal litigation, Bright-Birnbaum reanalyzed the prints lifted by Hunter and determined that Hunter had made 14 errors.[1] Among the errors was Hunter's determination that the print on the awl,

[1] For procedural reasons relating to the scope of the remand from the Supreme Court of the United States, Mr. Smith's actual innocence was not before the federal courts in 2016. Instead, he was constrained to the development and presentation of claims of ineffective assistance of counsel and post-conviction counsel under *Martinez v. Ryan*, 556 U.S. 1 (2012).

Item 00101B, had no value. *See id*; App. 1, Ex. 1, Bright-Birnbaum Report at 1–2. In addition to determining that Mr. Smith *did not* leave that print on the awl, Bright-Birnbaum found that Item 001-01B *was* identifiable—that is, enough of the print from the awl was lifted and preserved to provide sufficient information such that a comparison could be made. *Id*. at 2.

During the course of litigating his entitlement to relief based upon the newly enacted Post-Conviction Fingerprint Act of 2021, Mr. Smith learned that new DNA technology was available that could allow for a DNA profile to be developed from the "touch DNA" left in that identifiable, yet still unidentified, fingerprint. Though it has been theoretically possible to develop "touch DNA" for several years, the Applied Biosystems™ GlobalFiler™ PCR Amplification Kit was not developed until 2012 and did not become available in most labs until after 2017. App. 1, Ex. 4 at 8, SERI Report. Moreover, the fully continuous probabilistic genotyping software program used for analysis on the awl, BulletProof Sentry, was not available until 2022. *Id*.

Upon realizing that Bright-Birnbaum's analysis showed that the unknown perpetrator's print was on the murder weapon and that new scientific procedures were available to obtain profiles in such circumstances, Mr. Smith sought touch DNA analysis of the awl. On January 19, 2022, the criminal court, seeing the agreement of the parties, ordered the release of the awl to Mr. Smith's DNA analyst. App. 5, 1/19/22 Agreed Order. On February 28, 2022, the criminal court ordered release of the known samples back to SERI. App. 6, 2nd Agreed Order. Reanalysis of the known samples was required because the 2016 analysis

results were not sufficient for comparison with the new technology used to analyze the biological material left behind on the awl.

On March 30, 2022, SERI issued a report confirming the presence of the unknown assailant's DNA on the murder weapon. App. 1, Ex. 4, SERI Report at 4. The three victims were excluded as sources of this DNA profile. *Id*. Most notably, though, Mr. Smith was *definitively excluded* as the contributor of this DNA. *Id*.

The significance of his new scientific evidence cannot be overstated: Oscar Smith has, using new touch DNA technology, demonstrated that he is not the person who used the awl to kill his family. He now has both an identifiable fingerprint *and* a DNA profile from the true assailant for comparison to any alternate suspect(s).

## REASONS FOR GRANTING THE APPLICATION

The post-conviction court denied Mr. Smith's motion under Tennessee Code Annotated § 40-30-117 because "given the extensive evidence of Mr. Smith's guilt produced at his trial, even when considering the DNA evidence resulting from SERI's recent testing in a light most favorable to the Petitioner, the Court concludes Mr. Smith would be unable to prove *by clear and convincing evidence* that the DNA evidence establishes he is actually innocent of the offenses for which he was convicted." App. 2, Order at 12 (emphasis added). The trial court abused its discretion in denying Mr. Smith's claim, because it misapprehended Mr. Smith's burden of proof under Section 40-30-117 and failed to follow the procedure set out in Tennessee Supreme Court Rule 28 § 6(B).

The post-conviction court's obligations with regard to petitions of

post-conviction relief are governed by Supreme Court Rule 28 § 6. The procedure followed by the court, below, failed to follow the Supreme Court's dictates. In particular, the post-conviction court failed to follow Section 6(2) which requires the court to determine "whether the petition states a colorable claim." Tenn. Sup. Ct. R. 28 § 6(B)(2). The court further failed, upon making the determination of a colorable claim, to follow Rule 28 § 6(B)(3)(d) which requires the court to order the state to respond to the claim. The court also failed to follow Rule 28 § 6 (B) (4)(c) requiring the court to set out conclusions of law in support of the determination that the petition did not state a colorable claim. The court failed to re-review the petition and answer following the state's respond as is required by Rule 28 § 6.

In *Howell v. State*, 151 S.W.3d 450 (Tenn. 2004), the Tennessee Supreme Court held that Supreme Court Rule 28's "colorable claim" standard applies to motions to reopen. Mr. Howell moved to reopen post-conviction and, upon dismissal, argued on appeal that the trial court erred in dismissing his claim under the clear and convincing evidence standard. The Supreme Court agreed, finding that the heightened statutory standard violated due process when a petitioner has not had a prior opportunity to present the claim raised in the motion to reopen.

In *Howell*, the Court held that the due process concerns regarding the opportunity to raise a constitutional claim implicated fundamental rights: "If an excessively lengthy sentence implicates a fundamental right, . . . then certainly a death sentence would as well." *Id.* at 462–63. The Court continued, "[W]e find the case before us today does involve a fundamental right. We reject the State's attempt to frame the question

as one of a right to attack a conviction rather than a right to be free from unconstitutional punishment." *Id.*

The Court explicitly held that fundamental fairness is encompassed in due process. *Id*. The Court noted, that "[W]hile there is merit to the argument that procedural due process and substantive due process are conceptually different, we find that both encompass the central idea of fundamental fairness. If the petitioner in the present case is found to be mentally retarded, then he has a fundamental right not to be executed." For that reason, the Court held that "[d]ue process requires he be given a fair opportunity to litigate this claim in order to protect this right." *Id.*

Here, Mr. Smith has the same fundamental right not to be executed as Mr. Howell had. And just like Mr. Howell, he had no prior opportunity to raise the claim he now raises, as the technology that allowed SERI to isolate the unknown perpetrator's DNA did not exist until this year. App. 1, Ex. 4, SERI report (reflecting new technology not available until 2022); *see also* Order at 9-10 (finding "no reason to believe the timing results from an attempt to 'unreasonably delay the execution of sentence or administration of justice'"). Accordingly, under the binding Tennessee Supreme Court precedent in *Howell*, the standard the trial court should have used to evaluate Mr. Smith's entitlement to a hearing on his motion to reopen was the colorable claim standard set forth in Tenn. Sup. Ct. R. 28 § 6(B)(2). The trial court's decision to deny Mr. Smith a hearing based on the higher, clear and convincing standard was, accordingly, an abuse of discretion requiring reversal.

In *Van Tran v. State*, 66 S.W.3d 790 (Tenn. 2001), the Supreme

Court followed *Howell* and held that that fundamental fairness requires that "the petitioner have a meaningful opportunity to raise his substantive constitutional claim." *Id.* at 823–24. Capital sentencing requires a jury to consider "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *State v. Jones*, 568 S.W.3d 101, 136 (Tenn. 2019) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (cleaned up)); *see also* *Penry v. Johnson*, 532 U.S. 782, 797 (2001); *Skipper v. South Carolina*, 476 U.S. 1, 4–5, 8, (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982). Under Tennessee law, Mr. Smith was entitled to have his jury weigh any residual doubt they had in determining his sentence. Tenn. Code Ann. § 39–13–204(c); *State v. Kiser*, 284 S.W.3d 227, 260 (Tenn. 2009). However, because the DNA proof now presented was not available at the time of trial, Mr. Smith was denied his fundamental right to have his jury weigh the residual doubt it would have created.

"Residual doubt evidence" may consist of proof admitted during the sentencing phase that indicates the defendant did not commit the offense, notwithstanding the jury's verdict following the guilt phase. *State v. McKinney*, 74 S.W.3d 291, 307 (Tenn. 2002) (citing *State v. Hartman*, 42 S.W.3d 44, 55–56 (Tenn. 2001)). It may include arguments regarding the proof during the guilt phase, new evidence presented at the penalty phase, or even impeachment testimony of a "witness who offered direct rather than circumstantial proof of the defendant's involvement in the crime[.]" *See, e.g.*, *State v. Bane*, 57 S.W.3d 411, 422 (Tenn. 2001)

(quoting *Hartman*, 42 S.W.3d at 57). "[I]n general residual doubt is one of the most compelling mitigating circumstances a capital defendant can establish to improve his chances of receiving a life sentence." *Hartman*, 42 S.W.3d at 59.

Here, Mr. Smith has never had an opportunity to raise his constitutional claim that his sentencing was unreliable because the jury never heard that DNA evidence shows that someone else committed the crime. The proof of that claim did not exist until this year, and Mr. Smith brought it to court as quickly as possible, filing only five days after he obtained the expert proof establishing his claim.[2]

*Howell* and *Van Tran* dictate that where, as here, a petitioner has never had a chance to present a claim, the pleading standard is dictated by Tenn. Sup. Ct. R. 28 § 6(B)(2): the claim must "colorable" to merit a hearing. Once a colorable claim has been established, a petitioner is entitled to a hearing where entitlement to relief must be established by clear and convincing evidence. *Howell*, 151 S.W.3d at 463; *Van Tran*, 66 S.W.3d at 823–24. Here, where the post-conviction court determined that Mr. Smith could not have produced this evidence sooner, the court abused its discretion in failing to apply the colorable claim standard set out in *Howell* and *Van Tran*. Under the constitutionally required, colorable claim standard, Mr. Smith was entitled to meaningful, substantive

---

[2] Indeed, Mr. Smith filed his petition before obtaining a sworn declaration from the examiner. That declaration was submitted on April 7, 2022, to fulfill the statutory requirements of Tennessee Code Annotated § 40-30-117.

review—including a hearing on the merits. This Court should grant Mr. Smith's application, allow full briefing on the merits of his claim and then remand.

## CONCLUSION

Mr. Smith requests that this Court accept his application for permission to appeal to allow him to brief this matter fully. Pursuant to Tennessee Supreme Court Rule 28 § 10(B), Mr. Smith also requests oral argument on this application. Otherwise, he respectfully requests that the Court find that the post-conviction court abused its discretion in applying the "clear and convincing evidence" standard in violation of *Howell* and *Van Tran* and remand the case to the post-conviction court for application of the appropriate "colorable claim" standard.

Respectfully submitted,

KELLEY J. HENRY, BPR #21113
Supervisory Asst. Federal Public Defender

AMY D. HARWELL, BPR #18691
Asst. Chief, Capital Habeas Unit

KATHERINE M. DIX, BPR #22778
Asst. Federal Public Defender

FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE
810 Broadway, Suite 200
Nashville, TN 37203

Phone: (615) 736-5047
Fax: (615) 736-5265

BY: <u>/s/ *Amy D. Harwell*</u>
Counsel for Oscar Smith

**CERTIFICATE OF SERVICE**

I, Amy D. Harwell, certify that on April 13, 2022, a true and correct copy of the foregoing was served via electronic filing to opposing counsel, Samantha Simpson, Asst. Attorney General, P.O. Box 20207, Nashville, Tennessee, 37202.

BY: <u>/s/ *Amy D. Harwell*</u>
Counsel for Oscar Smith