IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| OSCAR SMITH )<br>)<br>Plaintiff )<br>)<br>) | **CAPITAL CASE** |
| v. )<br>) | No. _____ |
| BILL LEE, in his official capacity as )<br>Governor of the State of Tennessee )<br>) | |
| HERBERT SLATERY, in his official capacity )<br>as the Attorney General of the )<br>State of Tennessee )<br>) | |
| LISA HELTON, in her official capacity )<br>as the Interim Commissioner of the )<br>Tennessee Department of Correction, )<br>) | **EXECUTION SCHEDULED:**<br><br>**APRIL 21, 2022** |
| TONY MAYS, in his official capacity as )<br>Warden, Riverbend Maximum Security )<br>Institution, )<br>)<br>Defendants. ) | |

**EMERGENCY MOTION AND MEMORANDUM IN SUPPORT FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Oscar Smith respectfully moves this Court for a temporary restraining order prohibiting Defendants from executing Mr. Smith on April 21, 2022, to afford Mr. Smith time to litigate his Section 1983 lawsuit challenging the violation of his First and Fourteenth Amendment rights.

**I.      Background**

After 32 years of adamantly asserting his innocence, Oscar Smith finally has proof that someone else murdered his family. Indeed, he now has the perpetrator's fingerprints and DNA. Ex. 1, SERI DNA Report. Last year Mr. Smith presented

proof in state court showing that the unknown assailant's fingerprints were on the awl that was indisputably used in the murders for which he was sentenced to death. Mr. Smith also presented new expert palm print analysis that eviscerated the state's sole putatively "scientific" proof at his capital trial—Sergeant Johnny Hunter's testimony that there was "no doubt" that the palm print at the murder scene belonged to Smith. Despite his proof that "the most important piece of evidence presented to the jury," was, in the end, junk science, the courts closed their doors to Mr. Smith. Ex. 10, DA Letter; *see Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438, at *1 (Tenn. Crim. App. Mar. 23, 2022).

Now, as a result of new technological advances in DNA analysis, Mr. Smith has also discovered DNA left behind by the murderer in that unknown print on the awl. Ex. 1. Though it has been theoretically possible to develop "touch DNA" for several years, the Applied Biosystems™ GlobalFiler™ PCR Amplification Kit was not developed until 2012 and did not become available in most labs until after 2017. *Id.* at 8. The fully continuous probabilistic genotyping software program used for analysis of the DNA mixture on the awl, Bullet Proof Sentry, was not available until 2022. *Id.* That is, touch DNA was not available until well after Mr. Smith's trial and post-conviction proceedings, and the technology used to isolate the assailant's DNA from the victim's blood on the awl was not available until this year. *Id.*

On March 30, 2022, SERI issued a report confirming the presence of the unknown assailant's DNA on the murder weapon. *Id.* at 4. That is, SERI found an

2

identifiable DNA profile on the murder weapon and *definitively excluded* Oscar Smith as the contributor of that DNA. *Id.*

The significance of this result cannot be overstated: Oscar Smith has, using new touch DNA technology, demonstrated that he is not the person who used the awl to kill his family. Unlike other cases, there has never been any question that this crime was committed by one person. Indeed, in both opening and closing arguments, the prosecution argued that Mr. Smith, by himself, committed this crime. Mr. Smith did not kill his family. For 32 years, he has maintained his innocence and has attempted the nearly impossible task of proving a negative—that he did *not* murder anyone.

Mr. Smith immediately sought to present Tennessee's courts with his new scientific proof of his actual innocence: the fingerprint and the DNA of the perpetrator. On April 4, 2022, just days after receiving the SERI report, Mr. Smith filed his Motion to Reopen Post-Conviction Proceedings and/or for Review Under the Post-Conviction DNA Analysis Act of 2001, pursuant to Tennessee Code Annotated § 40-30-117 and § 40-30-301, *et seq.* Ex. 2, Smith DNA Motion & Petition. In less than two weeks, and without the benefit of a response from the State, let alone an evidentiary hearing, every level of Tennessee's courts rejected his attempts to have his evidence of actual innocence meaningfully considered prior to his execution. Ex. 3, Apr. 11, 2022 criminal court Order denying Smith DNA Motion & Petition; Ex. 4, Apr. 11, 2022 motion to reconsider; Ex. 5, Apr. 12, 2022 criminal court Order denying Smith Motion to reconsider; Ex. 6, April 12, 2022 Motion for Expedited Briefing; Ex.

3

7, Apr. 13, 2022 Application for Permission to Appeal to the CCA; Ex. 8, Apr. 14, 2022 CCA Order Denying Permission to Appeal; Ex. 9, Apr. 18, 2022 Tennessee Supreme Court Order Denying Application for Permission to Appeal.

Mr. Smith has now filed suit in this Court, seeking redress for the State's denial of his rights to due process and access to courts under the First and Fourteenth Amendments to the U.S. Constitution. He files the instant request for injunctive relief contemporaneous therewith, to prevent the State of Tennessee from executing an innocent man before such claims can be fully presented and considered on the merits. This Court should take action to prevent this case from becoming moot pursuant to the Court's authority under Article III of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 1651(a) (All Writs Act).[1]

## II.     Standard for Temporary Restraining Order

In determining whether to issue a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court is to consider: (1) Mr. Smith's likelihood of success on the merits; (2) whether Mr. Smith may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006). When determining whether to issue a temporary restraining order ("TRO"), a threat of an immediate, irreparable harm must be present. Fed. R. Civ. P. 65(b)(1)(A) (requiring a court to examine, on application for a TRO, whether "specific facts in an affidavit or a

---

[1] This motion is being filed under extreme exigency. Counsel for the Defendants are being served via email as of the time of this filing.

4

verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant"); *Cunningham v. First Class Vacations, Inc.*, No. 3:16-cv-2285, 2019 WL 1306214, at *1 (M.D. Tenn. Jan. 11, 2019).

Alternatively, the Sixth Circuit permits a district court, in its discretion, to grant a preliminary injunction or temporary restraining order "even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). In other words, "[a]ll four factors are not prerequisites but are interconnected considerations that must be balanced together." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

Because the same general analytical framework applies to both temporary restraining orders and preliminary injunctions, Mr. Smith relies on cases involving both types of relief.

### III. Analysis

#### a. Likelihood of Success on the Merits

Mr. Smith has filed a two-count complaint containing the following claims: (1) a Fourteenth Amendment claim concerning the denial of procedural due process and (2) a First Amendment claim concerning the denial of his meaningful access to

5

the courts. Mr. Smith has a cause of action to assert both claims through 42 U.S.C. § 1983. For the reasons stated below, Mr. Smith is likely to succeed on the merits of both constitutional claims.

### 1) Mr. Smith is Likely to Show He was Denied Procedural Due Process

Mr. Smith raises a facial challenge to the constitutionality of the Tennessee DNA statute. A state's procedures for DNA testing are constitutionally inadequate when they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, [or] transgresses any recognized principle of fundamental fairness in operation." *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (quoting *Medina v. Cal.*, 505 U.S. 437 (1992)).

The United States Supreme Court has recognized a constitutionally protected liberty interest in access to post-conviction relief and that a convicted state prisoner may bring a Section 1983 action on the basis that he or she was denied due process in seeking access to such post-conviction relief. See *Skinner v. Switzer*, 562 U.S. 521 (2011). A state's procedures for DNA testing are constitutionally inadequate when they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, [or] transgresses any recognized principle of fundamental fairness in operation." *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (quoting *Medina v. Cal.*, 505 U.S. 437 (1992)).

Tennessee recognizes the right to present a substantive claim of actual innocence. *Dellinger v. State*, 279 S.W.3d 282, 290–91 (Tenn. 2009). The DNA Act

6

provides that a person with favorable DNA results has the right to a hearing to seek release from conviction. Tenn. Code Ann. § 40-30-312 ("If the results of the post-conviction DNA analysis are favorable, the court shall order a hearing . . . ."). When a state law creates a liberty interest, such as the DNA Act, the state's procedures must comport with due process. *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *see also Est. of Alley v. State*, No. W2019-02046-CCA-R3-PC, 2021 WL 1828501, at *20 (Tenn. Crim. App. May 7, 2021), *appeal denied* (Sept. 22, 2021) (noting that the DNA Act creates a liberty interest). Likewise, when a state creates a judicial remedy, access to that remedy must be fairly afforded. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977). A statutory scheme providing access to post-conviction relief (such as the DNA Act) creates both a liberty interest and a judicial remedy. State procedures to access such relief must not, in their operation, offend principles of justice or fundamental fairness.

The Tennessee courts' interpretation of the DNA Act and Motion to Reopen statute have placed insurmountable roadblocks to Plaintiff, rendering those statutes essentially unavailable to him, in violation of his procedural due process rights.[2] Specifically, the court has read into Tennessee law a rule that petitioners may not access the court if "extensive evidence" of their guilt was introduced at trial, even where DNA evidence is favorable. This is an impossibly high bar.[3] Every

---

[2] The criminal court's decision is the last reasoned decision and so, presumably, is also the opinion of the Tennessee Supreme Court.

[3] *See House v. Bell*, 311 F.3d 767, 777 (6th Cir. 2002) (certifying a question to the Tennessee Supreme Court as to whether "Tennessee law require[d] a new trial

7

capital defendant was convicted because the jury found the evidence presented was sufficient to warrant death. And every state has passed a post-conviction DNA statute precisely because they recognize the significance of DNA evidence and its ability to cause a "strong case" to "evaporate[]." *See United States v. Fasano*, 577 F.3d 572, 578 (5th Cir. 2009). The Tennessee courts' interpretation of the DNA Act ignores the reality that hundreds of people have been exonerated by DNA after having been convicted based on proof that a jury found compelling "beyond a reasonable doubt." *See* Innocence Project, *DNA Exonerations in the United States*, https://innocenceproject.org/dna-exonerations-in-the-united-states/ (last visited Apr. 18, 2022).

Tennessee courts are required to presume that DNA results are exculpatory, and it is difficult to imagine evidence more exculpatory than confirmation that another individual's DNA was found—mixed with the victim's blood—on the murder weapon. By denying Mr. Smith's request for relief under the statutes based on a finding that there was "extensive evidence" against him, the court created an unconstitutional hurdle that renders the statutes toothless and ensures that petitioners cannot vindicate their liberty interests.

---

when newly discovered evidence of actual innocence, a significant part of which is in the form of DNA evidence which *could not be discovered* at the time of trial, creates a serious question or doubt that the defendant is guilty of first degree murder?"); *House v. Bell*, Case Nos. 08-5646/08-6155/08-5807, R. 403 (6th Cir. 2009) (noting the voluntary dismissal of the state's appeal of the conditional grant of habeas corpus based upon Mr. House's DNA proof).

8

The purpose of the DNA Act is thwarted by preclusion of access to evidentiary hearings and other post-conviction procedures and relief. Where the legislature enacted the statute to allow procedures by which an individual could prove their innocence and be released from custody and/or sentence of death, it is fundamentally unfair to petitioners, such as Plaintiff, to have impossible burdens placed upon them. Specifically, when petitioners, such as plaintiff, are denied process even with strong favorable proof, such as the DNA of an unknown person on the murder weapon, the DNA Act is applied in a manner that violates due process of law.

The Tennessee courts have similarly imposed an unconstitutional barrier upon Plaintiff by reading the Motion to Reopen statute as requiring a Plaintiff to satisfy, at the pleading stage, a standard wherein he was required to demonstrate his innocence by "clear and convincing evidence." Contrary to the construction of the Tennessee courts in this matter, the Motion to Reopen statute does not place such a tall burden upon a petitioner. The relevant section of this statute requires a petitioner to present a colorable claim of new scientific evidence of actual innocence and requires a court to assume all facts in the claim will be proven as true at a subsequent hearing. Tenn. Code Ann. § 40-30-117(a)(2), (4); Tenn. S. Ct. R. 28 § 6 (B)(2) (requiring the post-conviction court to "determine whether the petition states a colorable claim"); *Howell v. State*, 151 S.W.3d 450 (Tenn. 2004).

In the instant case, Plaintiff unquestionably identified a theory of innocence: he presented an alibi defense at trial and has always maintained that an alternate

suspect committed the murders. Plaintiff's new DNA analysis evidence is unquestionably new scientific evidence. The exclusion of Plaintiff as the source of the DNA on the murder weapon and the presence of an unknown suspect's DNA is unquestionably favorable. Such evidence strongly supports Plaintiff's theory of innocence and shows a "reasonable probability" of a more favorable verdict or sentence had the jury known about this evidence.

The impossible burden placed on Plaintiff by virtue of the construction of these two statutes by the Tennessee courts is fundamentally unfair and violates his right to due process of law.

### 2) Mr. Smith is Likely to Show He was Denied Access to the Courts

The Tennessee Courts have closed their doors to Mr. Smith. Because he has a liberty interest in the adjudication of his DNA Action, he is likely to prevail on the merits of his claim that he has been denied access to the courts. As this Court knows, a plaintiff with a nonfrivolous legal claim has the constitutional right to bring that claim to a court of law. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). This right of access to the courts finds support in several parts of the United States Constitution, including the First Amendment Petition Clause. *Id.* at n.12.

A prisoner may "have a liberty interest in demonstrating his innocence with new evidence under state law" and the state's procedures must afford adequate access to information to vindicate that state's right to post-conviction relief. *Osborne*, 557 U.S. at 68-69, 72. When a state law creates a liberty interest, such as the Post-Conviction DNA Act, the state's procedures must comport with due

10

Case 3:22-cv-00280 Document 3 Filed 04/18/22 Page 10 of 17 PageID #: 116

process. *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *see also Est. of Alley v. State*, No. W2019-02046-CCA-R3-PC, 2021 WL 1828501, at *20 (Tenn. Crim. App. May 7, 2021), *perm. app. denied* (Sept. 22, 2021) (noting that the DNA Act creates a liberty interest). Likewise, when a state creates a judicial remedy, access to that remedy must be fairly afforded. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977). A statutory scheme providing access to post-conviction relief is both a liberty interest and a judicial remedy. State procedures to access such relief must not, in their operation, offend principles of justice or fundamental fairness.

Tennessee recognizes the right to present a substantive claim of actual innocence. *Dellinger v. State*, 279 S.W.3d 282, 290–91 (Tenn. 2009); Tenn. Code Ann. §§ 40-30-301, *et seq*. Tennessee law provides that a person with favorable DNA results has the right to a hearing to seek release from conviction. Tenn. Code Ann. § 40-30-312 ("If the results of the post-conviction DNA analysis are favorable, the court shall order a hearing . . . ."). The Tennessee courts have recognized that the purpose of the DNA Act is to "exonerate the wrongfully convicted who are still imprisoned" and to "identify the true perpetrators of their crimes." *Powers v. State*, 343 S.W.3d 36, 51 (Tenn. 2011); *see also Est. of Alley v. State*, No. W2019-02046-CCA-R3-PC, 2021 WL 1828501, at *13 (Tenn. Crim. App. May 7, 2021), *perm. app. denied* (Sept. 22, 2021) (noting the legislative history indicates the two-fold intent of the legislature).

Mr. Smith has proof of his actual innocence in the form of the DNA of the actual perpetrator on the murder weapon. Ex. 1, SERI Report. New DNA

11

technology released for use earlier this year made it possible to isolate the perpetrator's DNA from the victim's blood on the awl found at the scene of the crime. This never-before-available, cutting-edge DNA technology affirmatively and definitively eliminates Mr. Smith as the source of the DNA on the murder weapon. Despite this proof—and the state courts' acceptance of its veracity—the state courts have refused to give Mr. Smith a forum for the adjudication of his claim. *See*, Ex. 3 Op. at 10 ("[I]n this case the Court has no reason to doubt that SERI's testing of the touch DNA obtained from the crime scene awl revealed a profile that was, conclusively, not that of Mr. Smith . . ."). Despite the state courts' acceptance of the new scientific evidence, the courts refused to give Mr. Smith a hearing on the merits of his claim of actual innocence. *Id*.

The Tennessee courts have denied Mr. Smith an adjudication on the merits of his claim, because the courts have read into the DNA Act a rule that petitioners may not access the courts if "extensive evidence" of their guilt was introduced at trial. This interpretation of the DNA Act flies in the fact of reality: some 375 people have been exonerated by DNA evidence to date—each of them having previously been convicted based on proof that a jury found compelling "beyond a reasonable doubt." *See* Innocence Project, *DNA Exonerations in the United States*, https://innocenceproject.org/dna-exonerations-in-the-united-states/ (last visited Apr. 18, 2022). Multiple exonerations have occurred despite evidence even more compelling that that introduced at trial against Mr. Smith.

12

Case 3:22-cv-00280    Document 3    Filed 04/18/22    Page 12 of 17 PageID #: 118

For instance, Clemente Aguirre-Jarquin was convicted of a 2004 double-homicide of his neighbor where 64 of 67 bloody shoeprints matched Aguirre-Jarquin, his fingerprint was on the murder weapon, and the police found clothes hidden in his apartment that were covered in the victim's blood. Nevertheless, Aquirre-Jarquin was exonerated a decade later with new scientific evidence pointing to the true killer. *See Innocence Project*, Clemente Aguirre-Jarquin Released After Prosecution Dismisses Charges, https://innocenceproject.org/cases/clemente-aguirre-jarquin/ (last visited April 18, 2022). In Rochester, New York, Douglas Warney was convicted of a murder that occurred in 1996. The victim was found dead in his home, stabbed 19 times in the neck and chest. The day after the crime, Warney called the police to provide information about the murder. Warney admitted to being at the scene, and subsequently provided a detailed confession to the crime which contained key non-public facts that only the killer would know: including what the victim was wearing, that the victim was cooking chicken, and that the killer cut himself with a knife and wiped the blood with a tissue in the bathroom. See *Warney v. State*, 947 N.E.2d 639,641 (N.Y. 2011). Warney requested testing for the purpose of comparing his DNA to the crime scene evidence and a search any unknown profile obtained in the DNA database to determine if it matched a known individual. Prosecutors opposed testing arguing the strength of the State's trial proof, and that the testing request was speculative, based on "a drawn-out kind of sequence of if, if, if." Yet that is exactly what happened. STR DNA testing on the victim's fingernails and blood from

13

the crime scene (on a towel and tissues) excluded Warney. The profile was entered into CODIS and matched an inmate who was serving a life sentence for a series of burglary and stabbing offenses involving a very similar modus operandi, who had no connection to Warney, and when questioned admitted that he alone had committed the crime. Warney's conviction was vacated upon a joint motion by the State and his lawyers at the Innocence Project. *Warney,* 947 N.E.2d at 645–46; *see also Innocence Project*, Douglas Warney Released After Post-Conviction DNA Testing Excluded Him from the Crime Scene, https://innocenceproject.org/cases/douglas-warney/ (last visited April 18, 2022).

Indeed, every capital defendant was convicted because the jury found the evidence presented was sufficient to warrant death. And every state has passed a post-conviction DNA statute precisely because they recognize the significance of DNA evidence and its ability to cause a "strong case" to "evaporate[]." *See United States v. Fasano*, 577 F.3d 572, 578 (5th Cir. 2009). Tennessee courts are required to presume that DNA results are exculpatory, and it is difficult to imagine evidence more exculpatory than confirmation that another individual's blood was found on the murder weapon. By denying Mr. Smith's request for relief under the statutes based on a finding that there was "extensive evidence" against him, the court created an unconstitutional hurdle that renders the statutes toothless and ensures that petitioners cannot vindicate their liberty interests.

### b. Irreparable Harm

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Wright & Miller, *Federal Practice and Procedure* § 2948.1. Moreover, when the party seeking the injunction has a full and adequate remedy at law, the harm is not irreparable. *See Fort v. Dixie Oil Co.*, 95 S.W.2d 931, 932 (Tenn. 1936). Defendants will execute Mr. Smith if the Court does not grant a TRO. Execution is the ultimate irreparable harm, and Mr. Smith has no adequate remedy at law for a wrongful execution. This requirement is satisfied.

### c. Substantial Harm to Others

The only hardship a TRO would work against Defendants would be a delay in Mr. Smith's scheduled execution. Mr. Smith took immediate steps to challenge the DNA evidence in his case, and he has now sought relief well in advance of his execution. *See* Ex. 3 at 9–10 ("[T]his Court has no reason to believe the timing results from an attempt to 'unreasonably delay the execution of sentence or administration of justice,' as contemplated in T.C.A. sections 40-30-404(4) and 40-30-405(4)."). Without a TRO, Mr. Smith—who has a legitimate claim of his actual innocence—stands to be executed. The equities favor a TRO in this case.

### d. Public Interest

"[I]t is always in the public interest to prevent violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d

15

1071, 1079 (6th Cir. 1994). Here, it is in the public interest to ensure that Mr. Smith receives a full review of the DNA evidence in his case. Defendants would likely respond that the public interest favors timely execution of criminal judgments. While that may be true in general, the public interest does not favor the execution of an innocent man.

## IV. Conclusion

For the reasons set forth above, and those stated in the complaint, plaintiff, Oscar Smith prays the court will:

1) conduct an emergency hearing on this motion;
2) issue a temporary restraining order and/or preliminary injunction restraining defendants from executing plaintiff pending further proceedings on his complaint.

                                            Respectfully submitted,

                                            AMY D. HARWELL, BPR #18691
                                            Asst. Chief, Capital Habeas Unit

                                            KATHERINE M. DIX, BPR #22778
                                            Asst. Federal Public Defender

                                            FEDERAL PUBLIC DEFENDER
                                            FOR THE MIDDLE DISTRICT OF
                                            TENNESSEE

                                            810 Broadway, Suite 200
                                            Nashville, TN 37203
                                            Phone: (615) 736-5047
                                            Fax: (615) 736-5265

                                            BY: /s/ Amy D. Harwell
                                            Counsel for Oscar Smith