# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **OSCAR SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CAPITAL CASE** |
| **v.** | ) | **No. 3:22-cv-00280** |
| | ) | |
| **WILLIAM LEE, in his official capacity as Governor of the State of Tennessee;** | ) ) | **JUDGE Trauger** |
| | ) | |
| **HERBERT SLATERY, in his official capacity as the Attorney General of the State of Tennessee;** | ) ) ) | **EXECUTION SCHEDULED: APRIL 21, 2022 at 7:00 p.m.** |
| | ) | |
| **LISA HELTON, in her official capacity as the Interim Commissioner of the Tennessee Department of Correction;** | ) ) ) | |
| | ) | |
| **and,** | ) | |
| | ) | |
| **TONY MAYS, in his official capacity as Warden of Riverbend Maximum Security Institution,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION AND MEMORANDUM IN SUPPORT FOR TEMPORARY RESTRAINING ORDER

---

Plaintiff has filed a complaint for injunctive and declaratory relief (D.E. 1) and a motion for a temporary restraining order (D.E. 3.), in which he asks the court to enjoin Defendants from carrying out his execution, which is scheduled to occur two days from now on April 21, 2022. Plaintiff contends that two recent Tennessee state court decisions violate procedural due process and his right of access to courts. Accordingly, Plaintiff asks this Court (1) to declare as unconstitutional on their face and as applied by the state courts certain Tennessee statutes the state

courts have interpreted and (2) to enjoin Defendants from proceeding with his execution until the state courts provide him with a proceeding that he deems "adequate." (D.E. 1, PageID# 12 ¶ 3.)

Plaintiff's motion for a temporary restraining order should be denied because this Court lacks subject matter jurisdiction over both claims under the *Rooker-Feldman* doctrine, Plaintiff has not stated a claim upon which relief can be granted, and the Defendants are immune from suit because they do not enforce the statutes that Plaintiff challenges.[1]

## PROCEDURAL BACKROUND

A jury convicted Plaintiff and sentenced him to death for the 1989 triple murders of his estranged wife and her 16-year-old and 13-year-old sons by a previous marriage. He had shot and stabbed his victims to death. *State v. Smith*, 868 S.W.2d 561, 565 (Tenn. 1993). Since "these tragic, brutal and bizarre murders," *id.* at 565, Plaintiff has spent over 30 years contesting his conviction and sentence in state and federal courts.[2]

---

[1] Defendants make a *limited appearance* in this matter solely to respond due to this Court's order, (D.E. 10); however, Defendants assert they are not yet within the jurisdiction of the court because they have not received proper service under Fed. R. Civ. P. 4.

[2] Plaintiff has launched at least nine attacks on his conviction or sentence, resulting in the following decisions listed in chronological order: *Smith*, 868 S.W.2d 561 (Tenn. 1993); *Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353 (Tenn. Crim. App. June 30, 1998), *perm. app. denied* (Tenn. Jan. 25, 1999); *Smith v. Bell*, No. 3:99-cv-0731, 2005 WL 2416504 (M.D. Tenn. Sept. 30, 2005); *Smith v. Bell*, 381 Fed. Appx. 547 (6th Cir. 2010); *Smith v. Colson,* No. 10-8629, 566 U.S. 901 (May 14, 2012); *Smith v. Colson*, No. 12-390, 569 U.S. 1015 (June 3, 2013); *West v. Schofield*, 468 S.W.3d 482 (Tenn. 2015); *Smith v. State*, No. M2016-01869-CCA-R28-PD (Tenn. Crim. App. Oct. 19, 2016), *perm. app. denied* (Tenn. Feb. 16, 2017); *West v. Schofield*, 519 S.W.3d 550 (Tenn. 2017); *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429 (M.D. Tenn. Jan. 8, 2018); *Smith v. State*, No. M2019-01662-CCA-R28-PD (Tenn. Crim. App. Oct. 28, 2019), *perm. app. denied* (Tenn. Jan. 15, 2020); *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610 (Tenn, *cert. denied sub nom. Zagorski v. Parker*, 139 S. Ct. 11 (2018), and *cert. denied sub nom. Miller v. Parker*, 139 S. Ct. 626 (2018), *and cert. denied*, 139 S. Ct. 1533 (2019); *Smith v. Parker*, No. 3:19-cv-01138, 2020 WL 1853593 (M.D. Tenn. April 13, 2020); *Smith v. State*, No. M2020-00485-CCA-R3-ECN, 2020 WL 5870566 (Tenn. Crim. App. Oct. 2, 2020), *perm. app. denied* (Tenn. Oct. 10, 2020); *Smith v. State*, No. M2020-00493-CCA-R28-PD (Tenn. Crim. App. May 1, 2020), *perm. app.*

Most recently, Plaintiff attacked his conviction in the form of a request for the Criminal Court of Davidson County to reopen his post-conviction proceedings based on what he claims is evidence of an unknown person's DNA on a suspected murder weapon. (D.E. 1-3, PageID# 37.) The state trial court denied this motion, finding that Plaintiff failed to demonstrate—as required by Tennessee law—either (1) that there is a "reasonable probability" the new information would have "prevented [his] prosecution or conviction," or (2) that he could "prove by clear and convincing evidence that the DNA evidence establishes he is actually innocent." (*Id.* at 44, 47-48.) On appeal, the Tennessee Court of Criminal Appeals affirmed the trial court's decision, noting that in light of the extensive circumstantial evidence against Plaintiff this "new" information did not establish "that he is actually innocent of the murders of the victims." *Smith v. State*, No. M2022-00455-CCA-R3-PD, 2022 WL 1115034, at *5 (Tenn. Crim. App. Apr. 14, 2022), *perm. app. denied* (Tenn. Apr. 18, 2022).

Plaintiff now asks this Court to evaluate the "Tennessee courts' interpretation" of Tennessee law in these two cases and enjoin Defendants from carrying out the sentence of death "until such time as the State of Tennessee provides a constitutionally adequate hearing." (D.E. 1, PageID# 8-10 ¶¶ 26-33, 36, PageID# 11-12 ¶ 3.)

### REASONS FOR REFUSING TO ISSUE A RESTRAINING ORDER

### I.     Standard for Granting Temporary Restraining Order

A stay of execution is an equitable remedy that is not available as of right. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Federal Rule of Civil Procedure 65 governs the Court's power to grant a temporary restraining order. In determining whether to grant a temporary

---

*denied* (Tenn. Aug. 5, 2020); *Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022).

restraining order, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g.*, *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). When—as in this case—a movant asks the court to stay a state's enforcement of its criminal judgments, the burden of the first factor is even greater, and the movant "must show a 'significant possibility of success on the merits' . . . to obtain a stay." *Wilson v. Strickland*, 333 F. App'x 28, 32 (6th Cir. 2009) (quoting *Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007)).[3] The first factor is also dispositive. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 362 (6th Cir. 2008) (finding that, because the plaintiffs had little likelihood of success on the merits, the court "need not address the other three factors for determining whether to grant a TRO or preliminary injunction").

A temporary restraining order is extraordinary relief and should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). A movant has not carried his burden if, among other reasons, the Court lacks subject matter jurisdiction over a claim, *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019), or if he fails to state a claim upon which relief can be granted, *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013).

## II. Plaintiff Cannot Show a Significant Likelihood of Success on the Merits of His Claims.

Plaintiff has not carried his burden under the first factor of the temporary-restraining-order standard. This Court does not have the authority to review an appeal from a state-court decision

---

[3] "The court permits citation of any unpublished opinion, order, judgment, or other written disposition." U.S. Ct. of App. 6th Cir. R. 32.1(a).

and, therefore, lacks subject matter jurisdiction over Plaintiff's allegations. Each of Plaintiff's counts also fails to state a claim upon which relief can be granted. And Defendants are immune from suit in this case because they do not enforce the statutes that Plaintiff challenges. Thus, Plaintiff's motion for a temporary restraining order should be denied.

### A. The Court's Review of this Complaint Is Barred Because the Court Lacks Jurisdiction to Review an Appeal of Tennessee State-Court Decisions.

This Court "must dismiss" any claim over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "Where subject matter jurisdiction is challenged . . . the plaintiff has the burden of proving jurisdiction in order to survive . . . ." *Arnold v. Slatery*, No. 19-6017, 2020 WL 3406067, at \*2 (6th Cir. Mar. 17, 2020) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). Federal courts lack subject matter jurisdiction if a claim does not present case or controversy, *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017), or if jurisdiction over the claim belongs "exclusively" to another court, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

Congress granted exclusive jurisdiction to the United States Supreme Court to review final judgments of state courts. 28 U.S.C. § 1257(a); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine operates to preserve that Congressional delegation of appellate jurisdiction. When state courts decide a constitutional issue—right or wrong—they exercise jurisdiction. *Rooker*, 263 U.S. at 415. The wrongness of a decision does not deprive the state court of jurisdiction so as to make the judgment void, "but merely [leaves] it open to reversal or modification in an appropriate and timely appellate proceeding." *Id*. Until the state court's decision is reversed or modified on appeal, it is a conclusive adjudication. *Id*. The *Rooker-Feldman* bar on district-court consideration of cases over which the Supreme Court has exclusive jurisdiction applies to "cases brought by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

This is one of those cases. Plaintiff lost his attempts to reopen his post-conviction proceedings in state court before filing this lawsuit. (D.E. 1, PageID# 3 ¶ 10, 5-6 ¶¶ 14-17.) Tennessee courts considered the merits of Plaintiff's DNA evidence and concluded it was not sufficient, in light of "extensive evidence of [Plaintiff's] guilt introduced at trial," to merit reopening post-conviction proceedings. *Smith*, 2022 WL 1115034, at *3-4. Now Plaintiff asks this Court to review and undermine these state court decisions by issuing relief based entirely on the arguments that the state courts violated Plaintiff's constitutional rights.

Plaintiff asks this Court to enjoin the State of Tennessee from executing him until Tennessee state courts provide him with an "adequate" hearing. (D.E. 1, PageID# 11-12 ¶ 3.) He argues that he is entitled to this relief due to the following actions of Tennessee state courts:

- "Tennessee courts' interpretation of [Tennessee statutes] have placed insurmountable roadblocks to Plaintiff, "

- A Tennessee state "court has read into Tennessee law a rule that petitioners may not access the court if 'extensive evidence' of their guilt was introduced at trial,"

- A Tennessee "court created an unconstitutional hurdle that renders [Tennessee] statutes toothless and ensures that petitioners cannot vindicate their liberty interests,"

- "The Tennessee courts have similarly imposed an unconstitutional barrier upon Plaintiff by reading [Tennessee law] as requiring a Plaintiff to satisfy, at the pleading stage, a standard wherein he was required to demonstrate his innocence by 'clear and convincing evidence,'"

- Tennessee courts have "constructed" Tennessee statutes in a manner that places "tall burden upon a petitioner" and "is fundamentally unfair and violates [Plaintiff's] dupe process" rights, and

- "Tennessee courts" have "authoritatively construed" Tennessee law to "impose unreasonable barriers to court access not contemplated by the legislature."

(D.E. 1, PageID# 8-11 ¶¶ 26-28, 30-31, 33, 36.)  This is, transparently, an improper attempt to obtain federal judicial review of a state court decision, but as the Supreme Court held in one of the very cases upon which Plaintiff relies: "a state-court decision is not reviewable by lower federal courts." *Skinner v. Switzer*, 562 U.S. 521, 532-33 (2011).  Thus, the *Rooker-Feldman* doctrine bars this complaint.

This conclusion does not change even though Plaintiff seeks a declaration that certain Tennessee statutes are unconstitutional facially and as applied to him.  (D.E. 1, PageID# 11 ¶ 2.)  In answering whether *Rooker-Feldmen* bars a complaint because the source of an injury is a state-court judgment, courts are permitted to examine the "request for relief."  *Tubbs v. Long*, No. 3:20-CV-00477, 2022 WL 508895, at *6 (M.D. Tenn. Feb. 17, 2022) (quoting *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018)).  Here, while Plaintiff seeks declaration of a statute unconstitutional, Plaintiff *does not* allege that the statute itself is the cause of the alleged injury.  Indeed, Plaintiff's complaint lacks the necessary allegations for a facial challenge: it does not allege that there are "that there are no circumstances under which the statute can be applied in a constitutional manner." *Id.* at *8.  On the contrary, it suggests that the statutes would be constitutional in his eyes if state courts only interpreted them differently.  (D.E. 1, PageID# 7 ¶ 24, 8 ¶ 27, 9 ¶ 29, 10 ¶ 31.)

At best, the challenge must be described *only* as an as-applied challenge.  *See Durham v. Haslam*, 528 F. App'x 559, 563-64 (6th Cir. 2013) (finding that a plaintiff asserted an as-applied challenge that is barred under *Rooker-Feldman* rather than a "general challenge to a state statute" because "the plaintiff alleges that a state court interpreted and applied a state statute to her case in an unconstitutional manner"); *Tubbs*, 2022 WL 508895, at *11 ("Though it appears at points in her Complaint that Plaintiff has attempted to present her claims in such a way as to enable them to avoid the application of *Rooker-Feldman*, no artful pleading can change the reality—as revealed

7

in other parts of her Complaint—that Plaintiff's claims are premised on an injury the source of which places her claims within the scope of *Rooker-Feldman*.").  And, as this Court has recently recognized, *Rooker-Feldman* bars review of an as-applied challenge to the constitutionality of a state court's interpretation of a state statute. *Tubbs*, 2022 WL 508895, at *10.   Because *Rooker-Feldmen* bars review of this complaint, Plaintiff is unlikely to succeed on the merits.

**B.     Plaintiff fails to state a claim upon which relief can be granted.**

**1.     Plaintiff has not alleged facts showing a procedural due process violation.**

Plaintiff's motion argues that he was denied due process when the Tennessee state courts rejected his requested relief under the Post-Conviction DNA Analysis Act of 2001 (the "DNA Analysis Act").  *See* Tenn. Code Ann. § 40-30-312.  Plaintiff insists, without any supporting law, that "[t]he Tennessee courts interpretation of the DNA [Analysis] Act and Motion to Reopen statute have placed insurmountable roadblocks to Plaintiff, rendering those statutes unavailable to him, in violation of his procedural due process rights." (D.E. 1, at PageID# 7.)

As recognized by the Supreme Court in *Medina v. California*, 505 U.S. 437 (1992), a state's regulatory action is "not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Medina*, 505 U.S. at 445 (quoting *Patterson v. New York*, 432 U.S. 197, 201–02 (1977)). This test applies to "state procedural rules which . . . are part of the criminal process." *Id*. at 443.

In this instance, Plaintiff's allegations concern the final stage of his criminal sentence—the date his execution will be carried out—and, as the Sixth Circuit recently noted, the "criminal sentence" is "an integral part of the criminal process." *United States v. McShan*, 757 F. App'x 454, 467 n.6 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 2032 (2019), *reh'g denied*, 140 S. Ct. 21, 204

(2019), and *cert. denied*, 139 S. Ct. 2650 (2019). Accordingly, "to the extent his claim sounds in due process, it should be evaluated under the test set forth in *Medina v. California*." *Id.*

However, Plaintiff's motion fails to demonstrate how Tennessee's procedures for consideration of DNA testing claims under the DNA Analysis Act fundamentally "offend" the principles of justice. *Medina*, 505 U.S. at 445 (quoting *Patterson*, 432 U.S. at 201–02). The DNA Analysis Act allows, under certain circumstances, individuals convicted of certain crimes, including first degree murder, to obtain DNA testing of certain evidence at any time. See Tenn. Code Ann. §§ 40-30-301 through -313. Under that statute the trial court shall order DNA analysis if it finds:

> (1)     A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2)     The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3)     The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4)     The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304 (emphasis added). The trial court *may* order DNA testing if a "reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction" and elements (2) through (4) listed in subsection -304 are met. Tenn. Code Ann. § 40-30-305 (emphasis added).

Earlier this year, Plaintiff sought, and was granted by agreed order, additional DNA testing of the awl recovered at the crime scene. That testing utilized "touch DNA" to compare DNA taken

from two fingerprints found on the awl to determine whether the DNA profiles of those fingerprints matched either the plaintiff or any of the three victims in the case. Ultimately, the testing reaffirmed what was already presented to the jury—that Plaintiff's fingerprints were not found on the awl. (Attachment A, Trial Record, p. 1973.) The testing also confirmed that a major male contributor of the awl's DNA was, in fact, the victim, Chad Burnett.

Plaintiff sought relief pursuant to a motion to reopen his state post-conviction proceedings/and or for review under the DNA Analysis Act. After thoroughly considering the "new" DNA evidence, and the entirety of the existing record, in the light most favorable to Plaintiff, the trial court denied relief because "there is not a reasonable probability that the recently discovered DNA evidence would have prevented [Plaintiff's] prosecution or conviction." (D.E. 1-3, PageID# 47.) On appeal, the TCCA affirmed after concluding that the trial court properly analyzed Plaintiff's motion and correctly determined that "there was not a reasonable probability that the DNA evidence would have prevented Petitioner's prosecution or conviction or would have resulted in a more favorable conviction or sentence." *Smith v. State*, No. M2022-00455-CCA-R3-PD, 2022 WL 1115034, at *5 (Tenn. Crim. App. Apr. 14, 2022).

Simply put, nothing about the above procedures for consideration of DNA testing claims under the DNA Analysis Act fundamentally "offend" the principles of justice under *Medina* and, therefore, Plaintiff's complaint fails to state a claim upon which relief can be granted. Plaintiff does not seriously attempt to identify any fundamental principle the state-court decisions violated. He simply complains that the standard they applied was too demanding, and he could not meet it. But the weakness of his innocence claim is not a basis for finding a due process violation.

To that end, it is helpful to consider just how weak his innocence claim is. First, Plaintiff's motion mistakenly refers to the awl as the "murder weapon" when, in actuality, the murder

weapons in this case, a .22 caliber handgun and a knife, were never recovered. (Attachment A, Trial Record, pp. 2559-2623.). The awl only made puncture wounds to the bodies of two of the victims and, as stated above, the jury was made aware that Plaintiff's prints were not found on the awl. *Id*. at p. 1973.

Second, the DNA evidence proffered by Plaintiff fails to undermine or contradict any of the extensive evidence establishing his guilt. Prior to the murders, Plaintiff and the victim, Judith, separated after a violent confrontation between the Plaintiff and Judith's thirteen-year-old son, Jason, where Plaintiff had put a gun to Jason's head during an argument and proceeded to fire a shot into the air. *Id*. at pp. 1868-71. After this incident a warrant was sworn out against Plaintiff by Judith. A short time later, a second incident occurred which led to Judith swearing out a second warrant against Plaintiff for aggravated assault. *Id*. at p. 2191.

Additionally, Plaintiff threatened to kill the victim, Judith, multiple times, including mere weeks before the murders. *Id*. at pp. 1808-09, 2309, 2317-18. He also solicited multiple people to kill Judith prior to her murder. *Id*. at pp. 2264-65, 88-89. Then, eight months before the murders (February 1989), Plaintiff took out multiple life insurance policies for the victims, including a $20,000 policy for Judith and $5,000 policies for both Chad and Jason. *Id*. at pp. 2207-08. In March of 1989, Plaintiff took out additional life insurance policies with a separate life insurance company, insuring Judith again for $20,000, but this time insuring Chad and Jason for $10,000 each. *Id*. at p. 2199. These policies were in addition to the life insurance for each victim that had been in effect since 1985 with yet another life insurance company. *Id*. at p. 2248.

On the night of the murders, Plaintiff's car was observed at the victim's house between 11 and 11:15 pm.[4] *Id*. at pp. 2150, 2253, 2651, 2871-72. A 911 call was also received that night by the Metro-Nashville Police Department where one of the victims, later identified as Jason, can he heard yelling "Help me!" as a second victim, identified as Chad, screams Plaintiff's name in the background saying, "Frank, no, God, help me!"[5] *Id*. at pp. 1812, 1880.

Following, the discovery of the victims the next day, police noted that there was no sign of forced entry, indicating that the victims knew the assailant. *Id*. at p. 1944, 1970. During the investigation of the house, a leather awl was recovered at the scene along with a cotton work glove. *Id*. at p. 1954-55, 1962. Leather-working tools were recovered from Plaintiff's trailer during a search conducted less than two weeks after the murders, and Plaintiff admitted that he was a leather crafts enthusiast. *Id*. at pp. 2367-70, 2253. Similarly, a live .22 caliber cartridge was found in Plaintiff's house, although the .22 caliber weapon that was used was never recovered. *Id*. at pp. 2019, 2366. Evidence also showed that Plaintiff owned a .22 caliber pistol that he presented to a co-worker and was seen firing at a local shooting range before the murders. *Id*. at pp. 2230-31. And a palm print made in blood was found on the sheet near the victim's body which showed the same two missing fingers that Plaintiff's does not have on his left hand. *Id*. at p. 1947, 1992.

Later, after the discovery of the bodies, when Detectives confronted Plaintiff at his home, he never asked why they wanted to talk with him, nor did he ever ask why he was being questioned. *Id*. at pp. 2334, 2338, 2349, 2648). During questioning Plaintiff also referred to victims in the past

---

[4] The victims were killed between 11:20 and 11:30 pm. (Attachment A, Trial Record, pp. 2559-2623).

[5] Plaintiff's middle name is Frank which is the name Plaintiff always went by to friends and family. (Attachment A, Trial Record, pp. 1808, 1868). In fact, two leather belts were recovered inside Plaintiff's home after the murders, both with the name "Frank" on them. *Id*. at pp. 2367-68. Plaintiff also testified that he went by the name Frank. *Id*. at p. 2857.

tense repeatedly before being told they had been killed. *Id*. at pp. 2353, 2648. Even after being informed of the murders Plaintiff never asked officers logical questions such as where, when, how, or by whom. *Id*. at pp. 2354, 2649. Plaintiff also had noticeable abrasions to his right hand, right elbow, left back and shoulder blade—which were photographed and shown to the jury. *Id*. at pp. 1992, 2355-57.

Simply put, the presence of an unknown person's DNA on the awl does not establish Plaintiff's innocence. This is not an extraordinary case where a constitutional violation has resulted in the conviction of an innocent person and, as explained more fully below the societal interests in finality, comity, and conservation of scarce judicial resources requires that his court deny Plaintiff's motion.

### 2. Plaintiff has not alleged facts showing a violation of the right-of-access to courts.

Plaintiff also argues his execution should be stayed because he has been deprived of access to the courts. This allegation fails for much the same reasons as explained in the proceeding section and because the Complaint itself demonstrates that Plaintiff *has* received adequate access to state court.

The right of access to courts is a component of the First Amendment right to petition the government for redress of grievances. *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). While prisoners have a constitutionally protected right of access to the courts that right is not unrestricted. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "In order to state a claim for denial of meaningful access to the courts, . . . plaintiffs must plead and prove prejudice stemming from the asserted violation," such as "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing Lewis, 518 U.S. at 351-52). Similarly, the Supreme Court has held that "the underlying cause of action . . . is an

element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Ha*rbury, 536 U.S. 403, 415 (2002). Specifically, a party must allege, inter alia, that defendants "*prevented* him from filing a non-frivolous legal claim." *Clark v. Corr. Corp. of Am.*, 113 F. App'x 65, 67-68 (6th Cir. 2004) (emphasis added).

Here, Petitioner's motion and complaint do not meet these requirements. Plaintiff fails to show that he was prejudiced because his underlying actual innocence claim is unavailing, and he fails to allege any official act which frustrated his litigation. On the contrary, multiple state courts reviewed Plaintiff's motion to reopen post-conviction proceedings and DNA Analysis Act motion. Thus, he has not established a likelihood of succeeding on the merits of his access-to-courts claim.

## C. Defendants are immune from suit in this matter because they do not enforce the Tennessee statutes at issue.

Plaintiff has named as defendants the Governor of Tennessee, the Attorney General of Tennessee, the Interim Commissioner of the Tennessee Department of Correction, and the Warden of Riverbend Maximum Security Institution. These Defendants are immune from suit in this action under the Eleventh Amendment because they do not enforce the Tennessee laws that Plaintiff asks this Court to declare unconstitutional: the DNA Analysis Act, Tenn. Code Ann. §§ 40-30-301 to -313, and the motion to reopen statute, Tenn. Code Ann. § 40-30-117(a)(2).[6] (D.E. 1, PageID# 11 ¶ 2.)

Each "State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). A "fundamental aspect" of that sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment itself "confirms" that a State is

---

[6] Although Plaintiff included allegations about the Motion to Reopen Statute, he did not ask the Court to grant any relief regarding this statute. (D.E. 1, PageID# 11 ¶ 2.)

not "amenable to the suit of an individual without its consent." *Seminole Tribe*, 517 U.S. at 54 (quoting *Hans v. Louisiana*, 134 U.S. 1, 11 (1890)). And a "'suit against a state official in his or her official capacity is not a suit against the official,'" *see Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); it "is a suit against the State itself," *id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). That is true "regardless of whether [the suit] seeks damages or injunctive relief." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 444-45 (6th Cir. 2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).

Here, the named Defendants are state officials. *See* Tenn. Const. art. III, § 1, art. VI, § 5. And they have been sued in their official capacities. (D.E. 1.) So this action "is a suit against the State itself," *Russell*, 784 F.3d at 1046, which means that the Eleventh Amendment is a "true jurisdictional bar" to the suit unless an exception applies, *id*.

> **1.** **The *Ex parte Young* exception applies when a State official enforces or has threatened to enforce an allegedly unconstitutional law.**

The Supreme Court established an exception to a State's Eleventh Amendment sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908). There, the Court held that the plaintiffs could seek an injunction in federal court against a state official to prohibit him from enforcing an allegedly unconstitutional state law. *Id*. at 159-68. This exception to State sovereign immunity rests on the "fiction," *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997), that "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102. The *Ex parte Young* exception, though, does not "permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought" against a state official. *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270. Such an interpretation "would be to adhere to an empty formalism" and would "undermine" the purpose of the Eleventh

Amendment.  *Id.*; *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 268 (2011) (Roberts, C.J., dissenting) (observing that while the Court has "consistently acknowledged the important role *Ex parte Young* plays in 'promot[ing] the vindication of federal rights,'" it has also been "cautious not to give that decision 'an expansive interpretation'" (quoting *Pennhurst*, 465 U.S. at 105, 102)).  Instead, the *Ex parte Young* exception permits suits to proceed only where the state official has "some connection with the enforcement of the [allegedly unconstitutional statute]." *Ex parte Young*, 209 U.S. at 157.  That connection "is the important and material fact" that allows the claim to proceed.  *Id.*

Because a state official's connection with enforcement is essential, the Sixth Circuit has consistently held that "[g]eneral authority to enforce the laws of the state is not enough to make government officials the proper parties to litigation challenging the law." *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. Sch. Dist. Of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993)); *see id.* (holding the Eleventh Amendment barred suit against a state attorney general because the plaintiffs were "not complaining of any action by" the attorney general and the attorney general had not threatened enforcement); *cf. Russell*, 784 F.3d at 1046-47 (applying the *Ex parte Young* exception because a state attorney general's office had jurisdiction to investigate and prosecute violations of the challenged election laws, had "repeatedly fielded and investigated complaints of impermissible electioneering," and had "promised the public that it would pursue possible criminal sanctions").  For the *Ex parte Young* exception to apply, "[t]here must be 'a realistic possibility the official will take legal or administrative actions against the plaintiff's interests.'" *EMW Women's Surgical Ctr.*, 920 F.3d at 445 (quoting *Russell*, 784 F.3d at 1048).

2.      **The *Ex parte Young* exception does not apply here.**

The *Ex parte Young* exception does not apply here because not one of the Defendants has any role in enforcing, regulating, or otherwise executing the provisions of the DNA Analysis Act or the motion-to-reopen statute that Plaintiff challenges. *See* Tenn. Code Ann. §§ 40-30-304 to -305. Rather, under these statutes a *state court* has authority to "order DNA analysis." And, if the results of the DNA analysis are favorable for an inmate then a *state court* may "order a hearing" and "make orders as are required." Tenn. Code Ann. § 40-30-312. And a *state court* must decide whether a petitioner has alleged facts that would establish "by clear and convincing evidence that [he] is entitled to have the conviction set aside or the sentence reduced." Tenn. Code Ann. § 40-30-117(a)(4), (b).

Defendants, conversely, lack any authority to enforce these statutes because *all* authority to act is reserved to the judicial discretion of state courts. This lack of *any* connection between Defendants and enforcement of the challenged statutes mandates dismissal on sovereign-immunity grounds. *See EMW Women's Surgical Ctr.*, 920 F.3d at 446; *Children's Healthcare*, 92 F.3d at 1416-17. And, the clear enforcement authority reserved to state courts under the DNA Analysis Act and motion-to-reopen statute further demonstrates how this entire complaint is a challenge to *state-court* actions that, as discussed in Part II Section A is barred by *Rooker-Feldman*.

### III. The State's Interest in Enforcing Its Criminal Judgments Weighs Heavily Against Enjoining Plaintiff's Execution.

The second factor of the temporary restraining order standard—irreparable injury—weighs in Defendants' favor. Plaintiff argues that, because his sentence of death will soon be enforced, he will suffer an irreparable injury if a temporary restraining order is not issued. (D.E. 3, PageID# 121.) However, a finding of irreparable injury is only mandated *if* Plaintiff shows a significant possibility that he will succeed on the merits of his claims that his constitutional rights are

impaired. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). As discussed above, Plaintiff is unlikely to succeed on the merits of any of his claims.

The third factor—harm to others—also weighs in Defendants' favor. Victims have a state constitutional right to the prompt resolution of a case and sentence. Tenn. Const. art. I, § 35; *see also* Tenn. Code Ann. § 40-38-105. Depriving them of this right causes them harm.

Finally, the fourth factor—public interest—weighs against a stay of Plaintiff's execution. "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Bucklew*, 139 S. Ct. at 1133. To protect this interest, the Supreme Court has held that "[l]ast-minute stays [to executions] should be the extreme exception, not the norm, and 'the last-minute nature of an application' that 'could have been brought' earlier . . . 'may be grounds for denial of a stay.'" *Id.* at 1134 (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)); *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). Plaintiff waited until late evening on April 18, 2022, only three days before his execution date, to file a motion for a temporary restraining order. (D.E. 12.) The last-minute nature of this motion combined with the State's interest in the timely enforcement of its sentence weigh heavily against granting a stay of execution.

## CONCLUSION

For the reasons stated, Plaintiff's motion for a temporary restraining order should be denied.

Respectfully Submitted,


HERBERT H. SLATERY III
Attorney General and Reporter

ANDRÉE SOPHIA BLUMSTEIN
Solicitor General

s/ Scott C. Sutherland
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 029013
Scott.Sutherland@ag.tn.gov
Michael Stahl
Senior Assistant Attorney General
B.P.R. No. 032381
Micheal.Stahl@ag.tn.gov
MIRANDA JONES
Assistant Attorney General
B.P.R. No. 036070
Miranda.Jones@ag.tn.gov
Office of the Tennessee Attorney General
and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-4892
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Response in Opposition has been filed and served electronically to the following parties via the Court's electronic filing system on this the 19th day of April, 2022:

Amy D. Harwell
Katherine Dix
Federal Public Defender's Office (MDTN)
810 Broadway
Suite 200
Nashville, TN 37203
615-736-5047
Fax: 615-736-5265
Email: amy_harwell@fd.org
　　　　Katherine_Dix@fd.org
*Counsel for Plaintiff*

s/ Scott C. Sutherland
SCOTT C. SUTHERLAND