**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **OSCAR SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CAPITAL CASE** |
| **v.** | ) | |
| | ) | **Case No. 3:22-cv-00280** |
| **BILL LEE, in his official capacity as** | ) | **Judge Aleta A. Trauger** |
| **Governor of the State of Tennessee,** | ) | |
| | ) | **EXECUTION SCHEDULED:** |
| **HERBERT SLATERY, in his official** | ) | |
| **capacity as the Attorney General of the** | ) | **April 21, 2022** |
| **State of Tennessee,** | ) | |
| | ) | |
| **LISA HELTON, in her official capacity** | ) | |
| **as the Interim Commissioner of the** | ) | |
| **Tennessee Department of Correction,** | ) | |
| | ) | |
| **TONY MAYS, in his official capacity as** | ) | |
| **Warden, Riverbend Maximum Security** | ) | |
| **Institution,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

Plaintiff Oscar Smith, who is scheduled to be executed by the State of Tennessee on April 21, 2022, has filed a Complaint for Injunctive Relief, requesting a preliminary and permanent injunction barring the defendants from executing him "until such time as the State of Tennessee provides a constitutionally adequate hearing on the merits of his claim of actual innocence and entitlement to relief under the DNA Act (Tenn. Code Ann. § 40-30-301 *et seq.*) and/or Tennessee's Motion to Reopen statute (Tenn. Code Ann. § 40-30-117)." (Doc. No. 1, at 11–12.) Now before the court is Smith's Emergency Motion for Temporary Restraining Order ("TRO Motion"), in which he asks this court to restrain the defendants from executing him on April 21, 2022, "to afford

Mr. Smith time to litigate his Section 1983 lawsuit." (Doc. No. 3, at 1.) The defendants have received notice of the Complaint and TRO Motion and, at the court's directive, have filed a Response in Opposition to the TRO Motion. (Doc. No. 11.)[1] The plaintiff has filed a Reply. (Doc. No. 13.)

The court construes the motion as one for a preliminary injunction. Because there are no material factual disputes, the court will resolve the motion without conducting a hearing. *Accord Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011). For the reasons set forth herein, the court will deny the motion.

## I.    LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the procedures and requirements for the issuance of a preliminary injunction and a temporary restraining order ("TRO"), and the same standard generally applies to both TROs and preliminary injunctions. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). A TRO under Rule 65(b) typically issues without notice to the defendant. A preliminary injunction under Rule 65(a) contemplates notice to the defendant. Because the defendants here have notice of the plaintiff's motion and have responded to it, the court construes the motion as one for a preliminary injunction under Rule 65(a).

In determining whether preliminary injunctive relief is merited in a capital § 1983 case (as in other types of cases), the court must consider: (1) whether the movant has demonstrated a strong

---

[1] The defendants note that they make a limited appearance in this case solely to comply with the court's order, but, as of the time they filed their Response, they were not yet subject to the court's jurisdiction, not having received proper service under Rule 4 of the Federal Rules of Civil Procedure. (Doc. No. 11, at 2 n.2.)

likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay. *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009); *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). However, when a plaintiff fails to establish a strong likelihood of success on the merits, that factor is typically dispositive. *Ohio Republican Party*, 543 F.3d at 362 (finding that, because the plaintiffs had little likelihood of success on the merits, the court "need not address the other three factors for determining whether to grant a TRO or preliminary injunction").

The purpose of a preliminary injunction is to preserve a court's power to render a meaningful decision after a trial on the merits. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) (quoting Wright, Miller & Kane, *11A Federal Practice and Procedure: Civil* § 2946 (3d ed.) ("Wright & Miller")). Generally, a "preliminary injunction is appropriate whenever the policy of preserving the court's power to decide the case effectively outweighs the risk of imposing an interim restraint before it has done so." Wright & Miller § 2947. Failure to enjoin an imminently pending execution will obviously render the case moot as to the inmate long before any trial can be held. Nevertheless, stays of execution are not to be granted routinely. A court must weigh the interest of a state in carrying out a lawful death sentence and its parallel interest in the finality of criminal judgments. *Workman*, 486 F.3d at 912–13.

## II.  PROCEDURAL HISTORY

Oscar Smith was convicted more than thirty-two years ago by a jury in Davidson County, Tennessee of the triple murders of his estranged wife, Judith Smith, and two stepsons, Chad and Jason Burnett. He was sentenced to death for each murder. His convictions and sentences were

affirmed on direct appeal. *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993). The evidentiary basis for the convictions is set forth in that opinion, *see id.* at 565–68, and will not be repeated here except as necessary.

The state trial court denied post-conviction relief; the Tennessee Court of Criminal Appeals affirmed, and the Tennessee Supreme Court denied leave to appeal. *Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353, at *1 (Tenn. Crim. App. June 30, 1998), *perm. to appeal denied* (Tenn. Jan. 25, 1999). Smith then filed a federal habeas petition under 28 U.S.C. § 2254, alleging numerous constitutional violations, which this court (and judge) denied in 2005. *Smith v. Bell*, No. 3:99-0731, 2005 WL 2416504, at *1 (M.D. Tenn. Sept. 30, 2005), *aff'd*, 381 F. App'x 547, 2010 WL 2545521 (6th Cir. 2010), *cert. granted, judgment vacated sub nom. Smith v. Colson*, 566 U.S. 901 (2012) (remanding for reconsideration in light of *Martinez v. Ryan*, 566 U.S. 1 (2012)). Following remand, this court denied relief under *Martinez* and denied a certificate of appealability. *Smith v. Carpenter*, No. 3:99-CV-0731, 2018 WL 317429, at *14 (M.D. Tenn. Jan. 8, 2018). The Sixth Circuit likewise denied a certificate of appealability and dismissed Smith's appeal. *Smith v. Mays*, No. 18-5133, 2018 WL 7247244, at *4 (6th Cir. Aug. 22, 2018). The Supreme Court denied Smith's petition for a writ of certiorari. *Smith v. Mays*, 139 S. Ct. 2693 (2019).

On April 4, 2022, Smith filed a Motion to Reopen Post-Conviction Proceedings and/or for Review under the Post-Conviction DNA Analysis Act of 2001 in the Criminal Court for Davidson County, Tennessee. (Doc. No. 1-2.) According to the factual history set forth in that motion, Smith had previously presented new evidence to the Davidson County Criminal Court in July 2001 under the then-newly enacted Post-Conviction Fingerprint Analysis Act of 2021 ("Fingerprint Act"), Tenn. Code Ann. §§ 40-40-403 through -413, that (1) an unknown assailant's fingerprints were on

the awl that was "indisputably used in the murders for which he was sentenced to death"[2] and (2) that the expert proof presented at trial that a palm print at the murder scene belonged to Smith was no longer supported by the available science. (Doc. No. 1-2, at 1, 2.[3]) The state court denied relief based on this new evidence. That decision, however, is not at issue here.

While the appeal of that determination was still pending,[4] Smith learned that "new DNA technology [was] available," based on which it might be possible to obtain "touch DNA" from the fingerprint left on the awl. (*Id.* at 6.) On January 19, 2022, based on an agreement between the parties, the Davidson County Criminal Court ordered the release of the awl to Smith's selected DNA analyst, the Serological Research Institute ("SERI"), for the purpose of conducting DNA analysis. On February 28, 2022, the court entered another agreed order transferring samples of the petitioner's, Jason Burnett's, and Judith Smith's blood and Chad Burnett's hair to SERI, "so that a scientifically valid comparison could be achieved." (*Id.* at 7 n.3.) On March 30, 2022, SERI "issued a report confirming the presence of the unknown assailant's DNA on the murder weapon."

---

[2] The evidence presented at trial showed that at least three weapons were used to kill the three victims: a gun, a knife, and an awl. As this court previously found, summarizing the evidence presented at trial, Judith Smith, was "found lying on the bed in her bedroom with gunshot wounds in her neck and arm, ice pick-like puncture wounds to her chest, and her neck slit." *Smith v. Bell*, No. 3:99-0731, 2005 WL 2416504, at *3. Jason Burnett was found to have sustained numerous knife wounds that led to his death, *id.*, and Chad Burnett had "gunshot wounds to his head, chest and shoulder, knife wounds to his chest, back, abdomen and neck, [and] ice pick-like puncture wounds to his chest." *Id.* "A leather tooling instrument called an awl, which looks much like an ice pick, was found with blood on it in the kitchen" and was determined to have been the weapon that caused the puncture wounds on two of the victims. *Id.* at *3, *4. At the time of trial, the awl was determined to "contain[] no identifiable fingerprints." *Id.* at *4.

[3] Because the plaintiff filed unnecessary cover pages with each of his exhibits, the pagination of the original documents does not match the pagination assigned by CM/ECF. The court consistently refers herein to the CM/ECF pagination.

[4] The denial of relief under the Fingerprint Act has since been affirmed. *Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022), *perm. to appeal denied* (Tenn. April 6, 2022).

(*Id.* at 7 (citing SERI Report, Doc. No. 1-1, at 5).)[5] "That is, SERI found an identifiable DNA profile on the murder weapon and definitively excluded Oscar Smith as the contributor of that DNA." (*Id.*)

According to his state court motion, with this new evidence, Smith had "demonstrated that he is not the person who used the awl to kill his family." (*Id.* at 7–8.) He argued that this evidence constituted evidence of his actual innocence that entitled him to reopen his post-conviction petition pursuant to Tenn. Code Ann. § 40-30-117, the "Motion to Reopen Statute":

> Based upon the new scientific evidence contained in the SERI Report, this Court must permit Mr. Smith to reopen his post-conviction proceedings, and he should be granted an evidentiary hearing. At that evidentiary hearing, Mr. Smith should be permitted to present all evidence supporting his actual innocence to meet his burden of showing that his murder convictions should be set aside or, at a minimum, that his death sentence should be vacated.

(Doc. No. 1-2, at 8.)

Smith's motion also sought relief under the Post-Conviction DNA Analysis Act ("DNA Act"). The DNA Act sets forth the procedure for seeking the testing of DNA evidence and the

---

[5] The SERI report's analysis of the "awl handle" states:

a. A DNA mixture was obtained.

b. The DNA mixture was interpreted as originating from two contributors with a major male contributor. Chad Burnette could be the major contributor to this mixture. The chance that a randomly selected, unrelated person would have the same profile as the major contributor is approximately 1 in 4 octillion.

c. Oscar Smith, Jason Burnette, and Judy Smith are all excluded as contributors to the DNA results obtained from this item.

d. The minor portion of the mixture is suitable for comparison.

Recommendation

The results from the following items are suitable for comparison should a person of interest arise:

Awl Handle (Item 17-1)

(Doc. No. 1-1, at 5–6.)

circumstances under which a court may order DNA analysis. (*Id.* at 9 (citing Tenn. Code Ann. §§ 40-30-303, -305).) Under the statute, if a court grants a petition for DNA testing and the results come back "favorable" to the petitioner, "the court *shall order a hearing*." (*Id.* at 11 (quoting Tenn. Code Ann. § 40-30-312) (emphasis added).)

According to Smith, the parties agreed to DNA analysis, and the DNA analysis was performed by a laboratory that satisfied the statutory standards. (*Id.*) Smith argued that there was no unreasonable delay in seeking relief under the DNA Act and that the DNA analysis results were undeniably favorable to him. Specifically, he argued that the new DNA analysis excluded him and the victims as contributors of the DNA found on the awl and attributed it instead to an "unknown assailant." (*Id.* at 11.) As a result, Smith asserted that he was entitled to a hearing under the DNA Act. (*Id.*)

In an opinion issued April 11, 2022, the Davidson County Criminal Court denied the motion, finding that Smith was not entitled to have his post-conviction proceedings reopened or to relief under the DNA Act. (Doc. No. 1-3.) In reaching that decision, the court found the motion to be timely under all of the circumstances but held that, "even in viewing the evidence in the light most favorable to the Petitioner," he was not entitled to reopen his post-conviction proceedings or to relief under the DNA Act. (*Id.* at 11.) The state court noted that there was "no reason to doubt that SERI's testing of the touch DNA obtained from the crime scene awl revealed a profile that was, conclusively, not that of Mr. Smith." (*Id.*)[6] Nonetheless, the court concluded that

---

[6] The court did observe that, "while the awl still exists in a condition in which it can be tested, it is unclear whether the awl was preserved in such a manner that would have assured the DNA profiles were left at the crime scene and did not result from contamination." (Doc. No. 1-3, at 12 n.6.) The court noted that, if the other elements of Tenn. Code Ann. §§ 40-30-304 and -305 had been met, Smith would have been able to "present evidence concerning this issue at an evidentiary hearing." (*Id.*)

there is not a reasonable probability that the recently discovered DNA evidence would have prevented Mr. Smith's prosecution or conviction. Nor is there a reasonable probability the recently discovered DNA evidence would have resulted in a more favorable conviction or sentence for Mr. Smith had the DNA evidence been presented at trial. . . . Similarly, given the extensive evidence of Mr. Smith's guilt produced at trial, even when considering the DNA evidence resulting from SERI's recent testing in a light most favorable to the Petitioner, the Court concludes Mr. Smith would be unable to prove by clear and convincing evidence that the DNA evidence establishes he is actually innocent of the offenses for which he was convicted.

(*Id.* at 12–13.)[7]

Smith filed a Motion to Reconsider, in which he argued that the court had erred in focusing on Tenn. Code Ann. § 40-30-305, which governs the procedure for obtaining DNA testing, instead of on § 40-30-312, which requires a hearing if the DNA evidence obtained through such testing is "favorable" to the petitioner. (*See* Doc. No. 1-4, at 2.) He also argued that the court's analysis under § 40-30-305 was flawed, insofar as it failed to view the evidence in the light most favorable to Smith, and that, under Tennessee law, requiring a capital defendant to present clear and convincing evidence in order to be entitled to reopen a post-conviction petition is unconstitutional. (*Id.* at 13 (citing *Howell v. State*, 151 S.W.3d 450, 462–63 (Tenn. 2004)).) The court denied the motion without analysis. (Doc. No. 1-5.)

Smith thereafter filed a notice of appeal and an application for permission to appeal, which the Tennessee Court of Appeals consolidated and resolved in a single brief opinion. *Smith v. State*, No. M2022-00455-CCA-R3-PD, 2022 WL 1115034 (Tenn. Ct. Crim. App. April 14, 2022), *perm.*

---

[7] The court also noted that

in the DNA testing performed by Petitioner's selected laboratory, Mr. Smith's DNA "could be included as [a] contributor[ ] to the DNA results obtained" from the left sleeve of an "off-white long sleeve shirt with large red/brown stains." Presumably, this article of clothing was a bloodstained item worn by one of the victims at the time of that person's death.

(*Id.* at 12 (quoting SERI Report, Doc. No. 1-1, at 3, 4).)

*to appeal denied* (Tenn. April 18, 2022). It characterized the trial court's order as denying "both the request to reopen the previously-filed post-conviction petition" and the motion to "obtain" DNA testing under the DNA Act. *Id.* at *1. It found that the trial court had not abused its discretion in denying Smith's motion to reopen his post-conviction petition, because Smith had "not presented new scientific evidence establishing that he is actually innocent of the murders of the victims." *Id.* at *5. On that basis, the appellate court denied Smith's application for permission to appeal the denial of his motion to reopen. *Id.*

Regarding his motion for review under the DNA Act, the court again concluded that the trial court had not abused its discretion, stating:

> The trial court analyzed the motion pursuant to both Tennessee Code Annotated sections 40-30-304 and -305 and determined that there was not a reasonable probability that the DNA evidence would have prevented Petitioner's prosecution or conviction or would have resulted in a more favorable conviction or sentence.

*Id.* The appellate court did not address Smith's argument that he actually obtained DNA testing and, because the results were favorable, should have been afforded a hearing under § 40-30-312.

Smith's new Complaint in this court, filed immediately after the Tennessee Supreme Court denied review of that decision on April 18, 2022, asserts two claims under 42 U.S.C. § 1983: (1) a Fourteenth Amendment procedural due process claim premised on the state courts' denial of his motion to reopen his post-conviction petition and denial of a hearing based on favorable DNA evidence, under Tennessee's Motion to Reopen Statute and the DNA Act; and (2) a First Amendment claim premised upon the state courts' denial of meaningful access to the courts, likewise premised on the denial of his state court motion to reopen post-conviction proceedings and for relief under the DNA Act. (Doc. No. 1.) Based on these claims, he now seeks an injunction barring the defendants from executing him until the state affords him his rights to due process and to access the courts.

In their Response, the defendants argue that: (1) the court lacks subject matter jurisdiction over the plaintiff's claims under the *Rooker-Feldman* doctrine; (2) the plaintiff fails to state a claim for which relief may be granted; and (3) the defendants are immune from suit, because they are not charged with enforcing the statutes the plaintiff challenges. (Doc. No. 11, at 2.)

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

To establish a procedural due process violation under 42 U.S.C. § 1983, Smith must demonstrate that: (1) he had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) he was deprived of that protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford him adequate procedural rights before depriving him of his protected interest. *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010).

Regarding the plaintiff's First Amendment claim, "[t]he Constitution protects an individual's access to the judicial system—the right to bring a non-frivolous claim in a court of law." *Green v. City of Southfield*, 925 F.3d 281, 285 (6th Cir. 2019) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)). That protection extends to the rights of prisoners to "attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Kennedy v. Bonevelle*, 413 F. App'x 836, 838–39 (6th Cir. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). The right of access to courts, however, is not necessarily a right to access on the plaintiff's preferred terms or a right to ask one system of courts—the federal courts—to dictate how another system—the state courts—should handle its business. "It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis*, 518 U.S. at 349. "To state a

claim for denial of access to the courts," therefore, "a plaintiff must plead facts showing that he was prejudiced by the alleged violation." *Perry v. Knapp*, No. 20-1917, 2021 WL 1102298, at *4 (6th Cir. Jan. 4, 2021) (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)).

In this case, Smith argues, first, that he has a constitutionally protected liberty interest in access to post-conviction relief and may bring a § 1983 claim based on the denial of due process in seeking access to such post-conviction relief. (Doc. No. 3, at 6 (citing *Skinner v. Switzer*, 562 U.S. 521 (2011)).) This claim is premised on the Tennessee state courts' denial of his motion to reopen his post-conviction petition and for relief under the DNA Act. The plaintiff's First Amendment claim is similarly premised on the denial of his "liberty interest in the adjudication of his DNA Action." (Doc. No. 3, at 10.) He asserts that he has a liberty interest in demonstrating his innocence with new evidence, and the state's procedures must afford him adequate process in the form of a hearing on the merits of his claim of actual innocence. (*Id.* at 11–12.) He asserts that "[t]he Tennessee courts have denied [him] an adjudication on the merits of his claim, because the courts have read into the DNA Act a rule that petitioners may not access the courts if 'extensive evidence' of their guilt was introduced at trial." (*Id.* at 12.) He claims that, by doing so, the state courts "created an unconstitutional hurdle that renders the statutes toothless and ensures that petitioners cannot vindicate their liberty interests." (*Id.* at 14.)

### 1. The Rooker-Feldman Doctrine

The first question raised by the defendants' Response is whether the court has jurisdiction over the plaintiff's claims at all, based on the *Rooker-Feldman* doctrine. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923), the plaintiffs brought suit in federal district court to have a state court judgment adverse to them "declared null and void." In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), parties unsuccessful in the District of Columbia Court of Appeals brought a federal lawsuit against the court that had rejected their applications. As the Supreme

Court explained in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), that *Rooker* and *Feldman* had both held that such federal suits were "impermissible," because "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court," and the federal district courts are "empowered to exercise original, not appellate, jurisdiction." *Id.* at 283. In *Exxon Mobil*, the Court noted that some lower courts had extended the holdings of *Rooker* and *Feldman* beyond their original boundaries, and it held that the doctrine was to be strictly

> confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 283–84; *see also Carter v. Burns*, 524 F.3d 796, 798 (6th Cir. 2008) ("This circuit has interpreted that limitation to mean that the *Rooker-Feldman* doctrine applies only when a plaintiff complains of injury from the state-court judgment itself." (citing *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006)).

Generally, "[t]he pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim 'is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment.'" *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (quoting *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008)) (some internal quotation marks omitted). And "[t]he source of the plaintiff's injury may in turn be determined by examining the request for relief." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018). That is, if the source of the plaintiff's injury is not actually the actions or decisions of a state court, then the *Rooker-Feldman* doctrine does not bar the court from hearing the plaintiff's claims.

In *Skinner v. Switzer*, the Court declined to extend the doctrine to a § 1983 case brought by a state prisoner who had been convicted of capital murder and sentenced to death, alleging that the state district attorney's refusal to allow him access to biological evidence for purposes of forensic DNA testing violated his right to due process. The Court found, in light of *Exxon Mobil*, that the prisoner's case "encounter[ed] no *Rooker-Feldman* shoal," as it presented an "independent claim." *Skinner*, 562 U.S. at 532. There, the plaintiff "did not challenge the adverse [state court] decisions themselves." *Id.* Rather, he "target[ed] as unconstitutional the Texas statute they authoritatively construed." *Id.* As a result, the Court concluded, the federal courts did not lack subject matter jurisdiction over his suit.

In his Reply, the plaintiff argues that his case is "on all fours" with *Skinner*, but the court is not persuaded. Here, the plaintiff does not allege that he has been denied access to DNA evidence or deprived of the right to present that evidence to the state courts. Instead, he complains that the state courts improperly denied his request for a full evidentiary hearing to consider the impact of that DNA evidence, which he was allowed to present to the state court. The specific relief he seeks in the Complaint is that the defendants be enjoined from executing him until the "State of Tennessee provides a *constitutionally adequate* hearing on the merits of his claim of actual innocence and entitlement to relief under the DNA Act" (Doc. No. 1, at 11–12 (emphasis added))—the hearing that the Tennessee state courts declined to provide when they denied his motion for relief under the Motion to Reopen Statute and the DNA Act. In other words, Smith specifically and directly challenges the state courts' adverse determination of his motion for relief under the Motion to Reopen Statute and the DNA Act.

That the plaintiff specifically challenges the adverse state court rulings is substantiated by the language of the Complaint itself which, as the defendants point out, repeatedly asserts that Smith is entitled to relief based on the actions taken by the Tennessee state courts, including, that

- "Tennessee courts' interpretation of [Tennessee statutes] have placed insurmountable roadblocks to Plaintiff, rendering those statutes essentially unavailable to him" (Doc. No. 1 ¶ 26);

- The Tennessee state "court has read into Tennessee law a rule that petitioners may not access the court if 'extensive evidence' of their guilt was introduced at trial" (*id.* ¶ 27);

- The "court created an unconstitutional hurdle that renders [Tennessee] statutes toothless and ensures that petitioners cannot vindicate their liberty interests" (*id.* ¶ 28);

- "The Tennessee courts have similarly imposed an unconstitutional barrier upon Plaintiff by reading the Motion to Reopen statute as requiring a Plaintiff to satisfy, at the pleading stage, a standard wherein he was required to demonstrate his innocence by 'clear and convincing evidence'" (*id.* ¶ 30);

- Tennessee courts have "constructed" the Motion to Reopen Statute in a manner "contrary" to the statute itself, which "does not place such a tall burden upon a petitioner"(*id.* ¶ 31);

- The Tennessee courts' "construction of these two statutes . . . is fundamentally unfair and violates [Smith's] right to due process of law" (*id.* ¶ 33); and

- "Tennessee courts" have "authoritatively construed" the two statutes to "impose unreasonable barriers to court access not contemplated by the legislature" (*id.* ¶ 36).

Cognizant that the Supreme Court has advised that the *Rooker-Feldman* doctrine is to be narrowly construed, this court nonetheless finds that, regardless of his attempts to assert independent claims under § 1983, Smith, in essence, seeks appellate review of the state court's judgments denying him a hearing under the Motion to Reopen Statute and the DNA Act.[8]

---

[8] Examination of the relief sought confirms this conclusion: the plaintiff seeks a stay of execution until the state courts grant him the relief sought in the underlying state court motions under the Motion to Reopen Statute and the DNA Act. The court has difficulty envisioning how it

Notably, a facial challenge to the constitutionality of a state statute is not barred by *Rooker-Feldman*. *See Carter*, 524 F.3d at 798 ("The *Rooker-Feldman* doctrine 'does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general [*i.e.* facial] challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's application in a particular state case.'" (quoting *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003)). Although the plaintiff claims in his TRO Motion that he "raises a facial challenge to the constitutionality of the Tennessee DNA statute" (Doc. No. 3, at 6), as the quoted portions of the Complaint, above, make clear, Smith does not actually make any factual allegations raising a facial challenge to the statutes, for instance, by alleging that there are "no circumstances under which the statute can be applied in a constitutional manner." *Tubbs v. Long*, No. 3:20-CV-00477, 2022 WL 508895, at *8 (M.D. Tenn. Feb. 17, 2022).

Instead, he brings an "as-applied challenge" to the courts' interpretation of the state statutes—that is "a challenge to the law's application in a particular state case." *Hood*, 341 F.3d 593 at 597. This type of challenge can be barred by *Rooker-Feldman*. *See Durham v. Haslam*, 528 F. App'x 559, 563–64 (6th Cir. 2013) (finding that a plaintiff asserted an as-applied challenge that is barred under *Rooker-Feldman*, rather than a "general challenge to a state statute," because "the plaintiff alleges that a state court interpreted and applied a state statute to her case in an unconstitutional manner"). In *Durham*, the court found that the plaintiff's claim was barred, because her "entire argument rests on her premise that it was unconstitutional for the state to dismiss her petition for judicial review." *Id.* at 564. The court concluded that this was "nothing if not a challenge to the judgment of the state court that affirmed her discharge, because Durham

---

would draft such an injunction other than by effectively vacating the decision of the Tennessee Court of Appeals, something this court clearly lacks the authority to do.

alleges that the state court interpreted the statute and applied it to her case in an unconstitutional manner." *Durham*, 528 F. App'x at 564. As such, it was barred.

In *Carter v. Burns*, the Sixth Circuit held that the *Rooker-Feldman* doctrine did not bar the plaintiff's "facial challenge to the constitutionality of these Tennessee collateral review statutes," including the Motion to Reopen Statute, Tenn. Code Ann. § 40-30-117. *Carter*, 524 F.3d at 799. However, the court also held that the plaintiff's "as-applied challenge to the constitutionality of the Tennessee collateral review statutes" was barred, because his "alleged injury—that the Tennessee courts deprived him of judicial review and redress for his constitutional claims—is an injury from the prior state-court determinations that his constitutional claims were not cognizable or were otherwise barred." *Id.*; *see also Tubbs*, 2022 WL 508895, at *10 ("A review of Plaintiff's requested relief further supports the Court's understanding that the source of Plaintiff's injury in Count I is the state court's judgment. . . . This relief, like the relief requested in *Durham*, cannot be granted "without overturning the judgment of the state court"; thus *Rooker-Feldman* is implicated, barring the Court from considering the claims in Count I.").

The only claim raised by the plaintiff here that could conceivably be construed as a facial challenge, rather than an as-applied challenge, would be a claim that the Motion to Reopen Statute is unconstitutional, insofar as it requires petitioners to establish innocence by "clear and convincing evidence" rather than simply raising a colorable claim of actual innocence. But the plaintiff does not actually make such a claim. Despite the fact that the statute itself actually does require clear and convincing evidence, *see* Tenn. Code Ann. § 40-30-117(a)(4), the plaintiff complains that the Tennessee courts *in his case* "imposed an unconstitutional barrier upon Plaintiff by reading the . . . statute as requiring" the plaintiff to prove actual innocence by clear and convincing evidence, despite the fact that the Tennessee Supreme Court had previously construed

the statute as not "plac[ing] such a tall burden upon a petitioner." (Doc. No. 1 ¶ 31.) In other words, this claim, too, is an as-applied challenge.

The plaintiff also claims that he brings a "facial" challenge to the courts' reading of the DNA Act as allowing them to deny him a hearing, despite favorable DNA evidence, because "extensive evidence" of guilt was introduced at trial. (See Doc. No. 3, at 7.) However, this is not actually a facial challenge, because the plaintiff is complaining that the state court grafted a requirement onto the statute that is not actually included in the statute, thus rendering it unconstitutional as applied *to him*. (See Doc. No. 1 ¶ 27 (claiming that the Tennessee state "court has read into Tennessee law a rule that petitioners may not access the court if 'extensive evidence' of their guilt was introduced at trial").

*Carter* is particularly instructive here. Because it is plain that any relief granted would be in the form of finding that the state court decisions were wrong because they misapplied state law and thereby deprived the plaintiff of due process and access to the courts, they are plainly barred by the *Rooker-Feldman* doctrine. The court finds, in sum, that this is precisely the type of case that the Supreme Court has recognized as falling within the narrow confines of the *Rooker-Feldman* doctrine: a case "brought by [a] state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 283–84. The court, therefore, lacks subject matter jurisdiction to consider the claims brought by the plaintiff. As a result, the plaintiff has no likelihood of prevailing on the merits of his claims and is not entitled to injunctive relief.

## 2. The Merits of the Due Process Claims

Even assuming the court had jurisdiction to consider the claims on their merit, however, the court finds that the plaintiff cannot establish a substantial likelihood of success. First, the "Motion to Reopen Statute" provides in relevant part that

> [a] petitioner may file a motion in the trial court to reopen the first post-conviction petition only if . . . [t]he claim in the motion is based upon new scientific evidence *establishing that the petitioner is actually innocent* of the offense or offenses for which the petitioner was convicted; . . . and . . . [i]t appears that the facts underlying the claim, if true, would establish by *clear and convincing evidence* that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn. Code Ann. § 40-30-117(a) (emphasis added).

A petitioner filing a motion to reopen must support it with an affidavit setting forth admissible evidence. *Id.* § 40-30-117(b). And the court must deny the motion to reopen "unless the factual allegations, if true, meet the requirements of subsection (a)." *Id.* In other words, the motion must be denied unless the evidence presented by the petitioner, if true, establishes his actual innocence by clear and convincing evidence.

Smith's claim is that the state courts' imposition of the "clear and convincing evidence" standard violated his right to due process and that the Tennessee Supreme Court has already recognized as much. (*See* Doc. No. 3, at 9 (citing Tenn. S. Ct. R. 28 § 6 (B)(2) (requiring a post-conviction court to "determine whether the petition states a colorable claim"); *Howell v. State*, 151 S.W.3d 450 (Tenn. 2004)). In *Howell*, however, the petitioner sought to reopen his post-conviction proceeding, alleging that he was ineligible for the death penalty due to his intellectual disability, under *Van Tran v. State*, 66 S.W.3d 790 (Tenn. 2001), and *Atkins v. Virginia*, 536 U.S. 304 (2002). His motion to reopen was brought under a different provision of the Motion to Reopen Statute, Tenn. Code Ann. § 40-30-117(a)(1), which authorizes reopening post-conviction proceedings "based upon the ruling of an appellate court establishing a constitutional right that was not

recognized at the time of trial, if retrospective application of that right is required," again subject to the requirement that "the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced." *Id.* § 40-30-117(a)(4). The Tennessee Supreme Court held under the "specific and narrow circumstances in which a post-conviction petitioner files for relief for the first time under *Van Tran* or *Atkins*, requiring the petitioner to plead mental retardation by clear and convincing evidence in his motion to reopen his petition for post-conviction relief would be fundamentally unfair and a violation of due process." *Howell*, 151 S.W.3d at 463. This court is unaware of any Tennessee court opinions applying *Howell* outside the context of motions to reopen post-conviction proceedings under Tenn. Code Ann. § 40-30-117(a)(1) to establish mental incapacity as a basis for setting aside a death sentence. Thus, in applying the "clear and convincing evidence" standard in this case, the state courts simply applied state law.

Nonetheless, the plaintiff asserts that "a state's procedures for DNA testing are constitutionally inadequate when they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, [or] transgress[] any recognized principle of fundamental fairness in operation.'" (Doc. No. 3, at 7 (quoting *Dist. Atty's Off. v. Osborne*, 557 U.S. 52, 69 (2009)).) He does not, however, explain what recognized principle of fundamental fairness has been violated in this case. The state affords a route through which a convicted prisoner can seek analysis of DNA evidence and the reopening of post-conviction proceedings based on new DNA evidence. He has not shown that the state failed to afford him access to that process. Nor has he shown, as part of a facial challenge, that either the Tennessee Supreme Court or any federal court has held that the requirement that a motion to reopen state

post-conviction proceedings be supported by clear and convincing evidence of actual innocence violates a petitioner's federal due process rights.

The plaintiff's claim under the DNA Act, which is intertwined with his claim under the Motion to Reopen Statute, fares no better. In his Reply, the plaintiff focuses his argument on the fact that he was deprived of the hearing to which he claims entitlement under § 40-30-312. He states:

> Like the state courts, Defendants focus exclusively on Tennessee Code Annotated §§ 40-30-304, 305, which set out the standard for determining whether a petitioner may receive DNA testing. But the question is not whether Mr. Smith should have received DNA testing. DNA testing was performed. The question posed by Mr. Smith's complaint is whether Tennessee's statute as interpreted by the courts denied Mr. Smith procedural due process by failing to provide him a hearing under Section 312 such that he could prove his entitlement to relief.

(Doc. No. 13, at 3–4.) He asserts that, even though the state courts agreed that the DNA test results were favorable to him, they failed, "contrary to the express language of the statute, to provide him the hearing to which he was entitled." (*Id.* at 4.) In other words, he complains that the denial of a hearing violated state law.

Federal courts have recognized that "an alleged violation of state law 'could, potentially, be sufficiently egregious to amount to a denial of . . . due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). Nevertheless, it remains "well-established that violations of state law do not 'automatically translate into a deprivation of procedural due process under the United States Constitution.'" *Wedgewood Ltd. P'ship I v. Twp. pf Liberty*, 610 F.3d 340, 354 (6th Cir. 2010) (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)). Rather, "the Fourteenth Amendment's guarantee of due process is an independent federal standard for procedural fairness," *Vargas v. Cook Cty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020), and the plaintiff must show that the violation of state law also amounted to a violation

of that independent federal standard. The plaintiff must do so by establishing the same three elements required for any § 1983 plaintiff alleging a due process violation: "that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this protected interest; and (3) the state did not afford [him] adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). Smith has not identified any caselaw suggesting that the denial of an in-person hearing in this situation would amount to a denial of federal due process. It bears emphasis that he was able to obtain DNA analysis, to present the results of that analysis to the state courts and request a hearing in conjunction therewith, and to appeal the denial of his request for an evidentiary hearing. The only deprivation of a state law right that allegedly occurred was the denial of a hearing, which the trial court found would be futile and unnecessary.

The plaintiff also complains that the state courts denied him due process by grafting the requirements of § 40-30-305 onto § 40-30-312, requiring him to overcome "extensive evidence" of guilt to be entitled to a hearing, even where the DNA evidence was favorable. (*See* Doc. No. 3, at 7.) Again assuming that this claim is not barred by the *Rooker-Feldman* doctrine, that is not what the state courts actually did. Rather, they assumed that the DNA evidence was favorable to the plaintiff but concluded both that the evidence did not constitute actual evidence of innocence and that its introduction at trial would not have affected the outcome.[9] Again, the plaintiff has not

---

[9] The plaintiff asserts that "it is difficult to imagine evidence more exculpatory than confirmation that another individual's blood was found on the murder weapon." (Doc. No. 3, at 14.) But he did not present evidence of another individual's *blood* on the awl handle; he presented evidence of another individual's *DNA* on the awl handle, apparently obtained from a fingerprint. (Doc. No. 1-1, at 5; Doc. No. 1-2, at 2.) At trial, the jury heard proof that no identifiable fingerprints had been lifted from the awl handle. (*See* Doc. No. 11-1, at 17, Trial, Tr. 1973.) However, the fact that neither Smith's DNA nor fingerprint was recovered from the awl handle does not exclude him as the assailant or contradict any other evidence presented at trial.

shown how this conclusion violated his fundamental rights by failing to afford him adequate procedural rights before depriving him of any liberty interest in an evidentiary hearing.

### 3. The Merits of the Access to the Courts Claim

The plaintiff's claim that he was deprived of access to the courts by the state courts' denial of his request for a hearing under the DNA Act and the Motion to Reopen Statute is so intertwined with his due process claim that it is nearly impossible to separate them. Regardless, a claim for denial of access to the courts requires proof that the defendants somehow prevented him from pursuing a non-frivolous legal claim, *see Clark v. Corr. Corp. of Am.*, 113 F. App'x 65, 67–68 (6th Cir. 2004), and that he was prejudiced thereby. *Perry v. Knapp*, No. 20-1917, 2021 WL 1102298, at *4 (6th Cir. Jan. 4, 2021). As discussed above, the plaintiff does not make either of these showings. He presented his case to the state courts. They denied relief, finding that the evidence he presented was not strong enough to merit further proceedings. The state courts simply did not deprive the plaintiff of any rights to due process or access to the courts when they concluded that the DNA evidence did not constitute evidence of actual innocence and that, regardless, consideration of the evidence by the jury would not have affected the outcome of the case.[10]

The plaintiff, in fact, presented his claims to the state courts; he was armed with the DNA evidence he sought; and the state courts considered his motions all the way through the appellate

---

[10] The defendants go into substantial detail regarding the evidence presented at trial that supported Mr. Smith's conviction, which the court finds no need to summarize here, beyond noting that this court, too, previously found and now again finds the evidence supporting the conviction to be fairly overwhelming and the DNA evidence to be underwhelming, particularly in light of the facts that: (1) the awl was only one of three weapons used in the murders (two of which—the gun and the knife—were never recovered) and was not, as Mr. Smith repeatedly claims "the" murder weapon; (2) the DNA evidence in this case does not actually contradict any evidence presented at trial that established the plaintiff's guilt; and (3) the presence of an unknown person's DNA on the awl does not actually establish the plaintiff's innocence or that the unknown person was the assailant.

process. He had his day in court. The fact that the trial courts concluded that he did not present sufficient evidence to proceed further with his claims does not amount to a deprivation of his right to access the courts. It simply means that the state courts, applying state law, denied his claim for further relief.

## IV.    CONCLUSION

It bears emphasizing that the plaintiff challenged his convictions and death sentence through direct appeal, post-conviction, federal habeas proceedings, and additional state court challenges before requesting—and receiving—DNA analysis of the evidence. He presented that evidence to the state courts, at both the trial level and on appeal. The state courts considered the evidence, presumed that it was favorable to the plaintiff, and concluded, based on their application of state law, that the plaintiff was not entitled to pursue additional relief. These facts, viewed in the light most favorable to the plaintiff, are simply not sufficient to establish a violation of his rights to due process, to a judicial remedy, or to access the courts. The plaintiff got all of those things; he just did not like the results.

The court finds that the plaintiff has not established a substantial likelihood of success on the merits of any of his claims, even assuming that the court has jurisdiction to consider the claims. This determination is dispositive, as a result of which the court has no need to reach the "other factors for determining whether to grant a TRO or preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 362 (6th Cir. 2008). The TRO motion, construed as a motion for a preliminary injunction under Rule 65(a), therefore, will be denied.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge