IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| OSCAR SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | CAPITAL CASE |
| v. | ) | No. 3:22-cv-00280 |
| | ) | |
| WILLIAM LEE, in his official capacity as Governor of the State of Tennessee; | ) ) | Judge Trauger |
| | ) | |
| HERBERT SLATERY, in his official capacity as the Attorney General of the State of Tennessee; | ) ) ) ) | |
| | ) | |
| LISA HELTON, in her official capacity as the Interim Commissioner of the Tennessee Department of Correction; | ) ) ) | |
| | ) | |
| and, | ) | |
| | ) | |
| TONY MAYS, in his official capacity as Warden of Riverbend Maximum Security Institution, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Plaintiff has filed a complaint for injunctive and declaratory relief, alleging that Tennessee state courts violated his rights to procedural due process and to access the courts when they rejected his claim of actual innocence related to newly obtained DNA evidence. (D.E. 1.) The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and (6) because, as this Court has already noted, this Court lacks subject matter jurisdiction over both claims under the *Rooker-Feldman* doctrine,

and Plaintiff has not stated a claim upon which relief can be granted. (D.E. 17, 18.) Furthermore, Defendants are immune from suit because they do not enforce the statutes that Plaintiff challenges.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Plaintiff and sentenced him to death for the 1989 triple murders of his estranged wife and her 16-year-old and 13-year-old sons by a previous marriage. He shot and stabbed his victims to death. *State v. Smith*, 868 S.W.2d 561, 565 (Tenn. 1993). Since "these tragic, brutal and bizarre murders," *id*. at 565, Plaintiff has spent over 30 years contesting his conviction and sentence in state and federal courts.[1]

Most recently, Plaintiff attacked his conviction in the form of a request for the Criminal Court of Davidson County to reopen his post-conviction proceedings based on what he claims is evidence of an unknown person's DNA on a suspected murder weapon. (D.E. 1-3, PageID# 37.) The state trial court denied this motion, finding that Plaintiff failed to demonstrate—as required by Tennessee law—either (1) that there is a "reasonable probability" the new information would

---

[1] Plaintiff has launched at least ten attacks on his conviction or sentence, resulting in the following decisions listed in chronological order: *Smith*, 868 S.W.2d at 561; *Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353 (Tenn. Crim. App. June 30, 1998), *perm. app. denied* (Tenn. Jan. 25, 1999); *Smith v. Bell*, No. 3:99-cv-0731, 2005 WL 2416504 (M.D. Tenn. Sept. 30, 2005); *Smith v. Bell*, 381 Fed. App'x 547 (6th Cir. 2010); *Smith v. Colson,* No. 10-8629, 566 U.S. 901 (May 14, 2012); *Smith v. Colson*, No. 12-390, 569 U.S. 1015 (June 3, 2013); *West v. Schofield*, 468 S.W.3d 482 (Tenn. 2015); *Smith v. State*, No. M2016-01869-CCA-R28-PD (Tenn. Crim. App. Oct. 19, 2016), *perm. app. denied* (Tenn. Feb. 16, 2017); *West v. Schofield*, 519 S.W.3d 550 (Tenn. 2017); *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429 (M.D. Tenn. Jan. 8, 2018); *Smith v. State*, No. M2019-01662-CCA-R28-PD (Tenn. Crim. App. Oct. 28, 2019), *perm. app. denied* (Tenn. Jan. 15, 2020); *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610 (Tenn, *cert. denied sub nom. Zagorski v. Parker*, 139 S. Ct. 11 (2018), and *cert. denied sub nom. Miller v. Parker*, 139 S. Ct. 626 (2018), *and cert. denied*, 139 S. Ct. 1533 (2019); *Smith v. Parker*, No. 3:19-cv-01138, 2020 WL 1853593 (M.D. Tenn. April 13, 2020); *Smith v. State*, No. M2020-00485-CCA-R3-ECN, 2020 WL 5870566 (Tenn. Crim. App. Oct. 2, 2020), *perm. app. denied* (Tenn. Oct. 10, 2020); *Smith v. State*, No. M2020-00493-CCA-R28-PD (Tenn. Crim. App. May 1, 2020), *perm. app. denied* (Tenn. Aug. 5, 2020); *Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022); *In re: Oscar Smith*, Nos. 21-7670, 21A631, -- S. Ct. --, 2022 WL 1183204 (Apr. 21, 2022).

have "prevented [his] prosecution or conviction," or (2) that he could "prove by clear and convincing evidence that the DNA evidence establishes he is actually innocent." (*Id.* at 44, 47-48.) On appeal, the Tennessee Court of Criminal Appeals affirmed the trial court's decision, noting that in light of the extensive circumstantial evidence against Plaintiff this "new" information did not establish "that he is actually innocent of the murders of the victims." *Smith v. State*, No. M2022-00455-CCA-R3-PD, 2022 WL 1115034, at *5 (Tenn. Crim. App. Apr. 14, 2022), *perm. app. denied* (Tenn. Apr. 18, 2022).

Plaintiff now asks this Court to evaluate the "Tennessee courts' interpretation" of Tennessee law in these two cases and enjoin Defendants from carrying out the sentence of death "until such time as the State of Tennessee provides a constitutionally adequate hearing." (D.E. 1, PageID# 8-10 ¶¶ 26-33, 36, PageID# 11-12 ¶ 3.) Plaintiff moved for a temporary restraining order, which Defendants opposed. (D.E. 3, 10, 11.) The Court construed the motion as one for a preliminary injunction and denied it. (D.E. 17, 18.) The Court held that it is barred from reviewing the state court's adjudication of Plaintiff's actual innocence claim under the *Rooker-Feldman* doctrine. (D.E. 17, PageID# 344-350.) The Court also held that Plaintiff has "no likelihood of prevailing on the merits of his claims" because the statutes he has challenged did not violate procedural due process, and he has not established an access-to-the-courts claim. (Id. at 350-56.) Plaintiff's complaint should be dismissed.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(1) and (h)(3), this Court "must dismiss" any claim over which it lacks subject matter jurisdiction. "Where subject matter jurisdiction is challenged . . . the plaintiff has the burden of proving jurisdiction in order to survive . . . ." *Arnold v. Slatery*, No. 19-6017, 2020 WL 3406067, at *2 (6th Cir. Mar. 17, 2020) (quoting *Moir v. Greater Cleveland*

*Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  Federal courts lack subject matter jurisdiction if a claim does not present case or controversy, *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017), or if jurisdiction over the claim belongs "exclusively" to another court, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

When considering a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must raise more than a "possibility that a defendant has acted unlawfully"; there must be sufficient factual allegations to render the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wesley*, 779 F.3d at 429.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In the context of a motion to dismiss a claim brought under 42 U.S.C. § 1983, "the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law."  *Fritz*, 592 F.3d at 722.

4
Case 3:22-cv-00280   Document 20   Filed 05/09/22   Page 4 of 17 PageID #: 365

# ARGUMENT

This Court lacks subject matter jurisdiction over Plaintiff's allegations because (1) it does not have the authority to review an appeal from a state-court decision and (2) Defendants are immune from suit in this case because they do not enforce the statutes that Plaintiff challenges. Additionally, each of Plaintiff's counts fails to state a claim upon which relief can be granted. Thus, this case should be dismissed.

## I. Review of this Complaint Is Barred Because the Court Lacks Jurisdiction to Review an Appeal of Tennessee State-Court Decisions.

Congress granted exclusive jurisdiction to the United States Supreme Court to review final judgments of state courts. 28 U.S.C. § 1257(a); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine operates to preserve that Congressional delegation of appellate jurisdiction. When state courts decide a constitutional issue—right or wrong—they exercise jurisdiction. *Rooker*, 263 U.S. at 415. The wrongness of a decision does not deprive the state court of jurisdiction so as to make the judgment void, "but merely [leaves] it open to reversal or modification in an appropriate and timely appellate proceeding." *Id*. Until the state court's decision is reversed or modified on appeal, it is a conclusive adjudication. *Id*. The *Rooker-Feldman* bar on district-court consideration of cases over which the Supreme Court has exclusive jurisdiction applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

As this Court has already noted (D.E. 17), this is one of those cases. Plaintiff lost his attempts to reopen his post-conviction proceedings in state court before filing this lawsuit. (D.E. 1, PageID# 3 ¶ 10, 5-6 ¶¶ 14-17.) Tennessee courts considered the merits of Plaintiff's DNA evidence and concluded it was not sufficient, in light of "extensive evidence of [Plaintiff's] guilt

introduced at trial," to merit reopening post-conviction proceedings. *Smith*, 2022 WL 1115034, at *3-4. Now Plaintiff asks this Court to review and undermine these state-court decisions because, he claims, they violated his constitutional rights, and he urges this Court to enjoin the State of Tennessee from executing him until Tennessee state courts provide him with an "adequate" hearing. (D.E. 1, PageID# 11-12 ¶ 3.) He argues that he is entitled to this relief due to the following actions of Tennessee state courts:

- "Tennessee courts' interpretation of [Tennessee statutes] have placed insurmountable roadblocks to Plaintiff";

- A Tennessee state "court has read into Tennessee law a rule that petitioners may not access the court if 'extensive evidence' of their guilt was introduced at trial";

- A Tennessee "court created an unconstitutional hurdle that renders [Tennessee] statutes toothless and ensures that petitioners cannot vindicate their liberty interests";

- "The Tennessee courts have similarly imposed an unconstitutional barrier upon Plaintiff by reading [Tennessee law] as requiring a Plaintiff to satisfy, at the pleading stage, a standard wherein he was required to demonstrate his innocence by 'clear and convincing evidence'";

- Tennessee courts have "constructed" Tennessee statutes in a manner that places "tall burden upon a petitioner" and "is fundamentally unfair and violates [Plaintiff's] dupe process" rights; and

- "Tennessee courts" have "authoritatively construed" Tennessee law to "impose unreasonable barriers to court access not contemplated by the legislature."

(D.E. 1, PageID# 8-11 ¶¶ 26-28, 30-31, 33, 36.)

In light of these allegations, this Court properly recognized that Plaintiff, "in essence, seeks appellate review of the state court's judgments denying him a hearing under the Motion to Reopen Statute [Tenn. Code Ann. § 40-30-117] and the [Post-Conviction DNA Analysis Act of 2001 (the "DNA Analysis Act"), Tenn. Code Ann. §§ 40-30-301 to -313]." (D.E. 17, PageID# 347.) But, as the Supreme Court noted in one of the very cases upon which Plaintiff relies, "a state-court

6

Case 3:22-cv-00280  Document 20  Filed 05/09/22  Page 6 of 17 PageID #: 367

decision is not reviewable by lower federal courts." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Thus, as the Court has already found (D.E. 17), the *Rooker-Feldman* doctrine bars this complaint.

This conclusion does not change simply because Plaintiff seeks a declaration that certain Tennessee statutes are unconstitutional facially and as applied to him. (D.E. 1, PageID# 11 ¶ 2.) In answering whether *Rooker-Feldman* bars a complaint because the source of an injury is a state-court judgment, courts are permitted to examine the "request for relief." *Tubbs v. Long*, No. 3:20-CV-00477, 2022 WL 508895, at *6 (M.D. Tenn. Feb. 17, 2022) (quoting *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018)), *app. filed*, No. 22-5127 (6th Cir. Feb. 18, 2022). Here, while Plaintiff seeks a declaration that the DNA Analysis Act is unconstitutional, Plaintiff *does not* allege that the statute itself is the cause of the alleged injury. Indeed, as this Court recognized, Plaintiff's complaint lacks the necessary allegations for a facial challenge: it does not allege that there are "no circumstances under which the statute can be applied in a constitutional manner." (D.E. 17, PageID# 348 (quoting *Tubbs*, 2022 WL 508895, at *8); *see id.* at 350.) On the contrary, the Complaint suggests that the DNA Analysis Act would be constitutional in Plaintiff's eyes if state courts only interpreted them differently. (D.E. 1, PageID# 7 ¶ 24, 8 ¶ 27, 9 ¶ 29.)

The same is true of Tenn. Code Ann. § 40-30-117 ("the Motion to Reopen Statute"). Plaintiff never actually alleges it is unconstitutional. Instead, he alleges that the manner in which Tennessee courts interpreted the statute and applied it to him was unconstitutional. (D.E. 1, PageID# 9-10 ¶¶ 30-31.)

At best, the challenge must be described *only* as an as-applied challenge. *See Durham v. Haslam*, 528 F. App'x 559, 563-64 (6th Cir. 2013) (finding that a plaintiff asserted an as-applied challenge that is barred under *Rooker-Feldman* rather than a "general challenge to a state statute" because "the plaintiff allege[d] that a state court interpreted and applied a state statute to her case

in an unconstitutional manner"); *Tubbs*, 2022 WL 508895, at *11 ("Though it appears at points in her Complaint that Plaintiff has attempted to present her claims in such a way as to enable them to avoid the application of *Rooker-Feldman*, no artful pleading can change the reality—as revealed in other parts of her Complaint—that Plaintiff's claims are premised on an injury the source of which places her claims within the scope of *Rooker-Feldman*."). And, as this Court has recently

recognized, *Rooker-Feldman* bars review of an as-applied challenge to the constitutionality of a state court's interpretation of a state statute. *Tubbs*, 2022 WL 508895, at *10. Because "this is precisely the type of case that the Supreme Court has recognized as falling within the narrow confines of the *Rooker-Feldman* doctrine," the Court lacks jurisdiction over this complaint and it should be dismissed. (D.E. 17, PageID# 350.)

## II. Defendants Are Immune from Suit in this Matter Because They Do Not Enforce the Tennessee Statutes at Issue.

Plaintiff has named as defendants the Governor of Tennessee, the Attorney General of Tennessee, the Interim Commissioner of the Tennessee Department of Correction, and the Warden of Riverbend Maximum Security Institution. These Defendants are immune from suit in this action under the Eleventh Amendment because they do not enforce the Tennessee laws that Plaintiff asks this Court to declare unconstitutional: the DNA Analysis Act, Tenn. Code Ann. §§ 40-30-301 to -313, and the Motion to Reopen Statute, Tenn. Code Ann. § 40-30-117(a)(2).[2] (D.E. 1, PageID# 11 ¶ 2.)

Each "State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). A "fundamental aspect" of that sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment itself "confirms" that a State is

---

[2] Although Plaintiff included allegations about the Motion to Reopen Statute, he did not ask the Court to grant any relief regarding this statute. (D.E. 1, PageID# 11 ¶ 2.)

8

not "amenable to the suit of an individual without its consent." *Seminole Tribe*, 517 U.S. at 54 (quoting *Hans v. Louisiana*, 134 U.S. 1, 11 (1890)). And a "'suit against a state official in his or her official capacity is not a suit against the official,'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); it "is a suit against the State itself," *id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). That is true "regardless of whether [the suit] seeks damages or injunctive relief." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 444-45 (6th Cir. 2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).

Here, the named Defendants are state officials. *See* Tenn. Const. art. III, § 1, art. VI, § 5. And they have been sued in their official capacities. (D.E. 1.) So this action "is a suit against the State itself," *Russell*, 784 F.3d at 1046, which means that the Eleventh Amendment is a "true jurisdictional bar" to the suit unless an exception applies, *id*.

The Supreme Court established an exception to a State's Eleventh Amendment sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908). There, the Court held that the plaintiffs could seek an injunction in federal court against a state official to prohibit him from enforcing an allegedly unconstitutional state law. *Id*. at 159-68. This exception to State sovereign immunity rests on the "fiction," *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997), that "a suit challenging the constitutionality of a state official's action is not one against the State," *Pennhurst*, 465 U.S. at 102. The *Ex parte Young* exception, though, does not "permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought" against a state official. *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270. Such an interpretation "would be to adhere to an empty formalism" and would "undermine" the purpose of the Eleventh Amendment. *Id.*; *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 268 (2011)

(Roberts, C.J., dissenting) (observing that while the Court has "consistently acknowledged the important role *Ex parte Young* plays in 'promot[ing] the vindication of federal rights,'" it has also been "cautious not to give that decision 'an expansive interpretation'" (quoting *Pennhurst*, 465 U.S. at 105, 102)). Instead, the *Ex parte Young* exception permits suits to proceed only when the state official has "some connection with the enforcement of the [allegedly unconstitutional statute]." *Ex parte Young*, 209 U.S. at 157. That connection "is the important and material fact" that allows the claim to proceed. *Id*.

Because a state official's connection with enforcement is essential, the Sixth Circuit has consistently held that "[g]eneral authority to enforce the laws of the state is not enough to make government officials the proper parties to litigation challenging the law." *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. Sch. Dist. Of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993)); *see id.* (holding the Eleventh Amendment barred suit against a state attorney general because the plaintiffs were "not complaining of any action by" the attorney general and the attorney general had not threatened enforcement); *cf. Russell*, 784 F.3d at 1046-47 (applying the *Ex parte Young* exception because a state attorney general's office had jurisdiction to investigate and prosecute violations of the challenged election laws, had "repeatedly fielded and investigated complaints of impermissible electioneering," and had "promised the public that it would pursue possible criminal sanctions"). For the *Ex parte Young* exception to apply, "[t]here must be 'a realistic possibility the official will take legal or administrative actions against the plaintiff's interests.'" *EMW Women's Surgical Ctr.*, 920 F.3d at 445 (quoting *Russell*, 784 F.3d at 1048).

The *Ex parte Young* exception does not apply here because none of the Defendants has any role in enforcing, regulating, or otherwise executing the provisions of the DNA Analysis Act or

10
Case 3:22-cv-00280   Document 20   Filed 05/09/22   Page 10 of 17 PageID #: 371

the Motion to Reopen Statute. Rather, under the DNA Analysis Act, a *state court* has authority to "order DNA analysis." Tenn. Code Ann. §§ 40-30-304 to -305. And, if the results of the DNA analysis are favorable for an inmate then a *state court* may "order a hearing" and "make orders as are required." Tenn. Code Ann. § 40-30-312. And, under the Motion to Reopen Statute, a *state court* must decide whether a petitioner has alleged facts that would establish "by clear and convincing evidence that [he] is entitled to have the conviction set aside or the sentence reduced." Tenn. Code Ann. § 40-30-117(a)(4), (b).

Defendants, conversely, lack any authority to enforce these statutes because *all* authority to act is reserved to the judicial discretion of state courts. This lack of *any* connection between Defendants and enforcement of the challenged statutes mandates dismissal on sovereign-immunity grounds. *See EMW Women's Surgical Ctr.*, 920 F.3d at 446; *Children's Healthcare*, 92 F.3d at 1416-17. And, the clear enforcement authority reserved to state courts under the DNA Analysis Act and the Motion to Reopen Statute further demonstrates that this entire complaint is a challenge to *state-court* actions that, as discussed above, is barred by *Rooker-Feldman*.

### III. Plaintiff Fails to State a Claim upon which Relief Can Be Granted.

Even setting aside these determinative jurisdictional failings, Plaintiff's two substantive claims—procedural due process and access to the courts—plainly lack merit.

#### A. Plaintiff has not alleged facts showing a procedural due process violation.

Plaintiff argues that he was denied due process when the Tennessee state courts rejected his requested relief under the DNA Analysis Act and the Motion to Reopen Statute. Plaintiff insists, without any supporting law, that "[t]he Tennessee court's interpretation of the DNA [Analysis] Act and Motion to Reopen Statute have placed insurmountable roadblocks to Plaintiff, rendering those statutes unavailable to him, in violation of his procedural due process rights."

(D.E. 1, at PageID# 8.)  This contention is based solely on the post-conviction court rejecting his requested relief without a hearing and its finding that his claims failed to meet the clear-and-convincing-evidence standard set forth in § 40-30-117.  (*Id.*)

As this Court has noted, a violation of state law does not "automatically translate" to a violation of due process rights.  (D.E. 17, PageID# 353-54.)  To show a violation of due process, Plaintiff must establish the same three elements required of any § 1983 plaintiff alleging a due process violation: "that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this protected interest; and (3) the state did not afford [him] adequate procedural rights."  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).  Here, Plaintiff does not, and cannot, establish any of these necessary elements.

Plaintiff has not alleged what fundamental interest has been violated in his case or how he was deprived of that interest.  Tennessee's DNA Analysis Act allows, under certain circumstances, individuals convicted of certain crimes, including first-degree murder, to obtain DNA testing of certain evidence at any time.  *See* Tenn. Code Ann. §§ 40-30-301 through -313.  Earlier this year, Plaintiff sought, and was granted by agreed order, additional DNA testing of an awl recovered at the crime scene.  That testing used "touch DNA" to compare DNA taken from two fingerprints found on the awl to determine whether the DNA profiles of those fingerprints matched either the plaintiff or any of the three victims in the case.  Plaintiff had presented this fingerprint evidence—including that one of the prints belonged to a member of the original investigative team and that the other did not match any fingerprints in available databases—in federal court four years ago.  At that time, the Sixth Circuit found that "[j]urists of reason could not disagree" that the evidence was "insufficient to establish prejudice from counsel's allegedly deficient performance."  *Smith v.*

*Mays*, No. 18-5133, 2018 WL 7247244, at *3 (6th Cir. Aug. 22, 2018) (declining to grant a certificate of appealability).

Plaintiff's newest DNA testing results merely reaffirmed what was already presented to the jury—that Plaintiff's fingerprints were not found on the awl. (D.E. 17, PageID# 354 n. 9.) The testing also confirmed that a major male contributor of the awl's DNA was, in fact, the victim, Chad Burnett. It also established what Plaintiff alleged in this Court four years ago: that someone, at some point, touched the awl, just like the member of the investigative team who also had left his fingerprint behind.

Solely on the basis of these reaffirming DNA results, Plaintiff sought relief pursuant to a motion to reopen his state post-conviction proceedings/and or for review under the DNA Analysis Act. After thoroughly considering the "new" DNA evidence, and the entirety of the existing record, in the light most favorable to Plaintiff, the post-conviction court denied relief because "there is not a reasonable probability that the recently discovered DNA evidence would have prevented [Plaintiff's] prosecution or conviction." (D.E. 1-3, PageID# 47.) On appeal, the Tennessee Court of Criminal Appeals affirmed after concluding that the trial court properly analyzed Plaintiff's motion and correctly determined that "there was not a reasonable probability that the DNA evidence would have prevented Petitioner's prosecution or conviction or would have resulted in a more favorable conviction or sentence." *Smith v. State*, 2022 WL 1115034, at *5.

Simply stated, the Tennessee state courts afforded Plaintiff a route through which he could seek analysis of DNA evidence and reopen his post-conviction proceedings based on new DNA evidence. He took that route. And the state courts, after thoroughly considering the "new" DNA evidence along with the entirety of the existing record, in the light most favorable to Plaintiff, denied relief because "there [was] not a reasonable probability that the recently discovered DNA

evidence would have prevented [Plaintiff's] prosecution or conviction." (D.E. 1-3, PageID# 47.) Plaintiff fails to identify any caselaw suggesting that the denial of an in-person hearing in this situation would amount to a denial of federal due process. And, as this Court notably determined:

> It bears emphasis that [Plaintiff] was able to obtain DNA analysis, to present the results of that analysis to the state courts and request a hearing in conjunction therewith, and to appeal the denial of his request for an evidentiary hearing. The only deprivation of a state law right that allegedly occurred was the denial of a hearing, which the trial court found would be futile and unnecessary.

(D.E. 17, PageID# 354.)

Nothing about the above procedures for consideration of DNA testing claims under the DNA Analysis Act, or the state's post-conviction reopening statute, violated Plaintiff's fundamental rights by failing to afford him adequate due process. Plaintiff merely complains that the standards applied by the state courts in his case was too demanding, and that he could not meet it. But the weakness of his innocence claim is not a basis for finding a due process violation.

### B. Plaintiff has not alleged facts showing a violation of his right to access the courts.

Plaintiff also claims that he has been deprived of access to the courts. This allegation fails because the Complaint itself demonstrates that Plaintiff *has* received adequate access to state court.

The right of access to courts is a component "of the First Amendment right to petition the Government for redress of grievances." *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). While prisoners have a constitutionally protected right of access to the courts, that right is not unrestricted. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "In order to state a claim for denial of meaningful access to the courts, . . . plaintiffs must plead and prove prejudice stemming from the asserted violation," such as "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Lewis*, 518 U.S. at 351-52). Similarly, the Supreme Court has held that "the underlying cause of action

. . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Plaintiff does not allege any official act that frustrated his litigation. On the contrary, multiple state courts reviewed his motion to reopen post-conviction proceedings and his DNA Analysis Act motion. They ultimately denied relief because the evidence he presented was not strong enough to merit further proceedings. As this Court determined, "[t]he fact that the trial courts concluded that he did not present sufficient evidence to proceed further with his claims does not amount to a deprivation of his right to access the courts. It simply means that the state courts, applying state law, denied his claim for further relief." (D.E. 17, PageID# 356.) Accordingly, Plaintiff fails to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss should be granted.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

ANDRÉE SOPHIA BLUMSTEIN
Solicitor General

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 029013
Scott.Sutherland@ag.tn.gov

MICHAEL STAHL
Senior Assistant Attorney General
B.P.R. No. 032381
Michael.Stahl@ag.tn.gov

MIRANDA JONES
Assistant Attorney General
B.P.R. No. 036070
Miranda.Jones@ag.tn.gov

Office of the Tennessee Attorney General
and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-4892
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and exact copy of the foregoing has been filed and served electronically to the following parties via the Court's electronic filing system on this the 9th day of May, 2022:

Amy D. Harwell
Katherine Dix
Federal Public Defender's Office (MDTN)
810 Broadway
Suite 200
Nashville, TN 37203
615-736-5047
Fax: 615-736-5265
Email: amy_harwell@fd.org
        Katherine_Dix@fd.org
*Counsel for Plaintiff*

                                            s/ *Scott C. Sutherland*
                                            SCOTT C. SUTHERLAND